[No. 9363.  *En Banc.*  June 10, 1911.]

THE STATE OF WASHINGTON, *on the Relation of Oregon Railroad & Navigation Company, Appellant,* v. CHARLES W. CLAUSEN, *State Auditor, et al., Respondents.*[1]

TAXATION—VALUATION OF RAILWAYS—POWERS OF COMMISSION—SIMILAR STATUTES—REPUGNANT ACTS.  Where the value of railway property has been fixed by the state railway commission pursuant to the act of 1907 (Rem. & Bal. Code, § 8638) passed March 8th and approved March 16, 1907, which provides for a determination of the actual value of all railroads by reference to the actual cost of reproduction and that the findings of the railway commission shall be conclusive in any proceeding in which the public and the railroad is interested, the state tax commission has no power to fix another valuation for the purposes of taxation, under the act of 1907 (Rem. & Bal. Code, § 9141) passed February 20th and approved March 6th, which provides that the state tax commission shall determine the annual assessment of the operating property of all railroads by reference to books, papers, market value of the stock, mileage and gross earnings, and personal view, if necessary; in view of both the object to be accomplished by the railway commission act and the fact that it was passed subsequently to the passage of the other act.

SAME—STATUTES—CONSTRUCTION — REPUGNANT ACTS — HARMONIZING ACTS PASSED AT SAME SESSION.  The two acts are repugnant, except in so far as the state tax commission may estimate the value until such time as the valuation is fixed by a more certain method by the state railway commission, and this construction should be adopted in order to harmonize two acts passed at the same session; especially in view of the amendatory act of 1911, p. 538, § 117, expressly making the railway commission valuations applicable for the purposes of assessment and taxation.

SAME—STATUTES—LEGISLATIVE CONSTRUCTION.  The courts will not speculate upon legislative intent when that body has subsequently put its own construction on prior enactments.

SAME — UNIFORMITY — UNEQUAL TAXATION.  Where railway property is assessed upon a higher standard than other railway property and an unequal burden is placed upon it, the company is denied the guaranties of the constitution, and may object although the property was assessed at less than its actual value.

SAME—VALUATION BY TAX COMMISSION—REVIEW — RECORD — PRESUMPTIONS.  An arbitrary order of the state tax commission raising

[1]Reported in 116 Pac. 7.

the valuation of railroad property from $19,500,000 to $27,529,771, cannot be sustained on appeal from the order, when the record on appeal does not show the introduction of any evidence or any inquiry by the commission such as is contemplated by Rem. & Bal. Code, § 9141, authorizing the commission to estimate the value; since no presumptions can be indulged on a direct appeal from the finding.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered November 2, 1910, in favor of the defendants, affirming an order of the state board of equalization in fixing the value of relator's properties for the purpose of taxation. Reversed.

*W. W. Cotton, Arthur C. Spencer,* and *Ralph E. Moody,* for appellant.

*The Attorney General,* for respondents.

CHADWICK, J.—The railroad commission law was passed by the legislature at its regular biennial session in 1905. Its primary object was to prevent discrimination and extortion in freight rates, and generally to regulate charges, facilities, and service of railroad companies. Section 12 of the Laws of 1905, page 155, enjoined a duty of ascertaining "the amount of money expended in the construction and equipment per mile of every railway in Washington." At the same session the legislature passed an act creating a state tax commission (Laws 1905, p. 224, chap. 115; Rem. & Bal. Code, § 9084 *et seq.*), and defined its duties and powers. Its work was intended to be supervisory and directory, the legislature evidently intending that its powers should be thereafter more specifically prescribed, for it was made the duty of the tax commission to investigate concerning the revenue systems of other states and countries, and to report its findings to the governor, with recommendations embodied in suitable bills for transmission to the legislature. In 1907 the legislature amended the railroad commission act most materially. [Page 536 *et seq.*] The commission was given

more general inquisitorial powers, with the right to summon witnesses, and to compel the production of books and documents, and to do and require to be done all things to make it an efficient instrument in the working out of the state policy as declared in the title of the original as well as the amendatory act. The bill, as introduced and passed, so changed § 12 of the original act that, instead of a power limited to the ascertainment of the original cost of railroad property, the commission was directed to "ascertain the total market value of the property and all facts proper to be considered in making up a proper and reasonable schedule of freight and passenger rates." The commission was clothed with the full power of the legislature, so far as its rights to investigate might go, and at the same time it was made a *quasi* judicial body, an appeal from its findings to the courts being provided so as to save any constitutional question in that behalf. The commission, after a due season and after notice had been given as in the act provided, instituted a hearing for the purpose of ascertaining the valuation of the railroad properties in this state; and, after a full hearing, found the value of the property of the three principal railway systems to be as follows: Northern Pacific Railway Company, $110,308,450. Great Northern Railway Company, $59,577,212. Oregon Railroad & Navigation Company, $19,500,000.

Section 12 of the railroad commission law (Rem. & Bal. Code, § 8638) provides:

"The findings of the commission, so filed, or as the same may be corrected by the courts, when properly certified under the seal of the commission shall be admissible in evidence in any proceeding or hearing in which the public and the railroad, express, telephone or telegraph company affected thereby is interested, and such findings when so introduced, shall be conclusive evidence of the facts stated in such finding or findings as of the date of filing under conditions then existing, and such facts can only be controverted or contradicted by showing a subsequent change in conditions bearing upon the facts therein determined."

It is admitted that no appeal was taken by the relator from the findings of the commission, and that in all proceedings, other than a hearing before the board of equalization, they are binding and conclusive upon the railroad company and upon the state.

At the same session of the legislature an act entitled, "An act to provide for the assessment of the operating property of railroads," (Laws 1907, p. 132, chap. 78; Rem. & Bal. Code, § 9141 *et seq.*) was passed.   It is provided in § 1 that the state board of tax commissioners shall make an annual assessment of the operating property of all railroad companies within this state, 'for the purpose of levying and collecting taxes as thereinafter provided.   After a definition of terms, it is provided, that the board shall have access to all books, papers, documents, statements, and accounts; that it may require returns to be made of all information called for by it; that it may summon witnesses and compel the production of books and papers; and further, that it should require the statement under oath of certain facts touching the business and value of the property of such corporations, including the market value of the shares of capital stock, funded debts, etc., the value of its bonds and other securities, its mileage and gross earnings, and such other facts and things as the board might require.   It is further provided that the board shall, on or before the 1st day of March and the 1st day of June in each year, according to their best knowledge and judgment, ascertain and determine the true cash value of the property of each railroad company within this state, and that every such company shall be entitled to a hearing, and present evidence.   It is also provided, that the value of property of railroads for assessment shall be made as of the same time and of like manner as the value of general property of the state, and that for the purpose of determining the true cash value the board might, if it deemed necessary, view and inspect the property of such company; that it should take into consideration the value of the entire system and mileage

of the whole system, and that upon the completion of such assessment, the board should give notice by mail to each railroad company assessed of the amount of its assessment as entered upon such rolls.    The act putting these duties upon the tax commission passed the House February 11, 1907, and the Senate February 20, 1907, and was approved by the governor March 6, 1907.    It was passed without an emergency clause.    The act amendatory of the railroad commission law, which gave that board power to find the physical value of the railroads, making its findings conclusive, passed the House March 8, 1907, and the Senate March 8, and was approved by the governor March 16, 1907.    This act was passed with an emergency clause.

It will thus be seen that we have two acts of the same legislature giving to two different boards the power to find the value of railroad property.    Accordingly, in the year 1910, the state tax commission undertook to value the property of the several railway systems.    It adhered to the values fixed by the railroad commission, in so far as the Northern Pacific and the Great Northern Railways are concerned, but increased the value of the property of the relator from $19,-500,000 to $27,529,771.    This act was confirmed by the state board of equalization, which is made up of the members of the state tax commission, sitting with the state auditor and the state land commissioner, and a levy against the property of relator was made on the basis of the added value. An appeal was taken to the superior court, and from an adverse judgment, relator has appealed.

It will be admitted, as a general rule of statutory construction, that repeals by implication are not favored, and that where there are two or more provisions relating to the same subject-matter they must, if possible, be construed so as to maintain the integrity of both.    So that, while a large part of the briefs is taken up with a discussion of cases tending to sustain the respective contentions of counsel, we think it would serve no useful purpose to review them.    For, after all,

statutes are to be construed by reference to certain fixed and well-known principles, and the cases relied on are but instances of the application of these principles. Therefore, we may adopt the following text as applicable to the case at bar:

"The rule that statutes *in pari materia* should be construed together applies with peculiar force to statutes passed at the same session of the legislature; it is to be presumed that such acts are imbued with the same spirit and actuated by the same policy, and they are to be construed together as if parts of the same act. They should be so construed, if possible, as to harmonize, and force and effect should be given to the provisions of each; if, however, they are necessarily inconsistent, a statute which deals with the common subject-matter in a minute and particular way will prevail over one of a more general nature; and of two inconsistent statutes enacted at the same session, that will prevail which takes effect at the later date." 36 Cyc. 1151.

"The construction of a particular provision of a statute should always be given with reference to the object of the statute, the connection in which such provision stands, the evident intention of the legislature, and the change which the whole statute shows it to be the purpose to effect, or, in other words, the evil it was intended to remedy. By considerations suggested by such reference to the whole statute, general words are often restricted in their application, and they have been deemed to be so limited in this instance." *Wheeler v. McCormick*, Fed. Case, No. 17,498.

It is not alone the time of passage that is to be considered in matters of this kind, but the object to be accomplished and the manner of its accomplishment. The amendment to the railroad commission act was not only passed and approved subsequent to the passage of the tax commission act of 1907, but as against the uncertain "bookkeeping," "stock and bond," and "capitalization" methods of ascertaining value, to which the tax commission was empowered to resort, with a view of the property if it deemed it necessary, the railroad commission was directed to find the actual value of the property; not by resort to bookkeeping methods or at the

peril of the fluctuating stock market, but by reference to the cost of reproduction; not the market value of its stock, but the real value of its property, considering its physical character and its earning capacity. In other words, it was provided that the property of railroads should be valued as the stock of the merchant or the land of the farmer is valued. Although we are reminded by counsel that the taxing authorities are not bound to consider physical value, but may resort to the "stock and bond" or "capitalization of earnings" method of taxation, we are undivided in our answer that it was undoubtedly the intent of the legislature, mindful of the evasions of railroad companies in years past, to avoid these methods and to put them upon the same plane as the individual whose acre is under his feet. Such methods were and are unfair—unfair to both parties to the tax; and we may well assume that, in passing the amendment to the railroad commission act, the legislature intended just what it said, that *when ascertained,* the value fixed by the railroad commission, after a full judicial hearing and with the aid of its engineers, accountants, experts, and practical and experienced men in every department of railroad engineering, accounting, and construction, should be binding and conclusive upon the public and upon the railroad companies. The legislature intended that the commission's findings should leave no doubt or uncertainty, and they are conclusive as made, unless revised by the courts in a proper proceeding.

But, if this be so, the two acts are not necessarily repugnant. Both may stand; the tax commission having full power to estimate the value of the property, until such time as the railroad commission may conduct its hearing, and return, for the benefit of the whole state and of its officers, the true value of the property.

There is another reason for our conclusion, not noticed by counsel. Courts are not at liberty to speculate upon legislative intent when that body, having subsequent opportunity, has put its own construction upon its prior enactments.

Our conclusion in this behalf is strengthened by reference to the public utilities act of 1911 (Laws 1911, p. 538, chap. 117). Section 92 of the public utilities act re-writes the provisions of § 12 of the original railroad commission act and all amendatory acts, and it is there provided that:

"The findings of the commission so filed, or as the same may be corrected by the courts, when properly certified under the seal of the commission shall be admissible in evidence in any action, proceeding or hearing in which the state or any officer, department or institution thereof, or any county, municipality or other body politic and the public service company affected is interested, whether arising under the provisions of this act or otherwise, and such findings when so introduced shall be conclusive evidence of the facts stated in such findings as of the date therein stated under conditions then existing, and such facts can only be controverted by showing a subsequent change in conditions bearing upon the facts therein determined. When the commission shall have valued the property of any public service company, as provided for in this section, nothing less than the market value so found by the commission shall be taken as the true value of the property of such company used for the public convenience for the purposes of assessment and taxation."

We have, therefore, not only in the act of 1907, but in the act of 1911, evidence of the fact that the legislature intended to arrive at the value of railroad property by a judicial process; and when that value was found, it was to be conclusive upon all parties as well as the state, and if the act of 1907 has hitherto seemed doubtful, care was taken in the act of 1911 to clear the doubt by adding that the findings of the commission should be taken as the true value of the property for the purposes of assessment and taxation.

It is further contended that, in any event, the value of the property as equalized being less than the value as ascertained by the tax commission, the relator is not harmed, because it is not called upon to pay a tax upon its full value. While theoretically all property should be assessed at its full value, it is well known that it is not so; that while the taxing author-

ities have undertaken to, and have with a greater or less degree of accuracy arrived at that true value, yet a certain percentage is accepted as a basis of valuation for tax purposes. There would be merit in this contention but for the fact that it is admitted that like property of other railroad corporations has not been so assessed. The value as fixed by the railroad commission was accepted in all other cases, and to sustain the finding of the board of equalization would be to put an unequal burden on the relator, thus violating the guaranties of the constitution. To these guaranties the courts cannot be blind.

Nor does the recent case of *Doty Lumber & Shingle Co. v. Lewis County*, 60 Wash. 428, 111 Pac. 562, militate against our position. There the tax was fixed by officers having authority to fix the value, and the record shows that:

"In raising the assessment upon the timber lands of the several appellants after the hearing, the tentative bases were not strictly adhered to, but the board took into consideration the distance of the property from a logging stream or a commercial railroad, and the contour of the land as affecting the expense of getting the timber to market. In short, it fixed values on the basis of the quality of the timber and its accessibility to market."

The value for taxation purposes had been made by the proper officers, after due inquiry and upon a proper legal basis. Here the effort to raise the property valuation of this relator, as against those possessed of like property, proceeded upon a fundamentally wrong basis. Not only was the raise made by those having no authority to do so, but so far as the record shows, there was no basis in fact for the increased valuation. There was no inquiry such as is contemplated by the act relied on. Starting from a wrong premise and without authority in law, no virtue could come of the tax commission's order, and relator, being as clear upon the record as those who own like property, is entitled to have it assessed upon the same valuations and the same percentages as fixed in other cases for the tax levy. As said in the *Doty* case,

one who is called upon to pay a tax upon "the true and fair value" of his property cannot complain because some other person is assessed at a lower valuation, so that the *Doty* case is really in line with our present reasoning, for the "true and fair value" being fixed by the railroad commission, it alone having power to determine that fact, any raise of valuation would give it just cause of complaint and exempt it from the limitations of the *Doty* case.

We have followed at some length the arguments and theories of the respective parties, believing that the importance of the case demands it.    But the writ must issue for another reason.    It is asserted that the order of the tax commission was arbitrary, and there is nothing in the record to show that it is not so.    No evidence was before the board of equalization other than that to which we have referred and all of which was offered by the relator.    Hence, it follows that the board of equalization, arbitrarily and without reference to the provisions of chapter 78, Laws 1907, p. 132 (Rem. & Bal. Code, § 9141 *et seq.*), or the evidence before it, raised the value of relator's property above that of the owners of like property.    Nor can we presume, as invited by counsel, that it had such evidence before it.    Such would be the rule upon collateral attack.    But here we have a direct appeal from the board and upon the record as there made, and no presumptions can be indulged in favor of the record.    But without sifting reasons or statutes, it would seem, on general principles of the law, that the value fixed by the board of equalization cannot be sustained.    The value of a property constructed of material things can be approximated with reasonable certainty.    There are doubtless many elements which conduce to a correct determination of the true value of property, and which may properly be considered.    The manner of making the inquiry is not so important when the question of the true value of the property is involved.    The property can have but one true value, whatever may be the purpose of the investigation; whether it be for the purpose of fixing

reasonable rates for transportation of passengers, or carrying freight, or for the purpose of taxation, "the rule to be applied in ascertaining the value of the property should be the same. . . . The same property cannot rightfully be valued at one sum for one of the purposes mentioned, and at a different amount for the other." *State ex rel. Bee Bldg. Co. v. Savage*, 65 Neb. 714, 91 N. W. 716.

By the law of this state railroads can charge no more than a fair return on a fair value of its property. This has been defined as just compensation by the highest tribunal in the land. Such rates can only be ascertained by deducting fixed charges, of which taxes are certain items. Hence, we may admit respondents' contention that the power of the railroad commission was limited in the act of 1907 to the ascertainment of value for rate-making purposes only, without weakening our argument. This court knows, as does every citizen, that in fixing rates the primary rule, in this state at least, is to find the true value of the property, considering its earning capacity, and after making due allowance for fixed charges, depreciation, and taxes, that the rates shall be so adjusted as to allow a fair interest return, and no more. To limit an income to a fair interest return on a certain sum and demand a much greater valuation as a basis for taxation would be manifestly unjust. If applied in the case of the citizen it would lead to rebellion, and if applied in the case of corporate property would result in confiscation; for if the power is admitted, there would be no limit to the arbitrary will of the officers to whom the power of taxation is delegated.

"The state is too just in the administration of its laws to insist that railroad property should, for taxation, be considered as of very great value, and for the purpose of regulating rates to be charged by such corporations as common carriers, that the value of the same property is altogether lower." *State ex rel. Bee Bldg. Co v. Savage, supra.*

Believing, first, that the railroad commission having by judicial process ascertained and returned the true value of re-

18—63 WASH.

lator's property, the tax commission had no power to fix a different value, or if it be not so held, that the value as fixed by the board of equalization was arbitrary, the judgment of the superior court is reversed, and the cause remanded with directions to enter an order, fixing the valuation of the properties of the relator in the state of Washington for taxation purposes; for the year 1910, at $19,500,000, and that the same percentage of its value be taken as a basis for the levy as was taken in considering like property belonging to others.

DUNBAR, C. J., GOSE, ELLIS, MOUNT, PARKER, MORRIS, and CROW, JJ., concur.

FULLERTON, J. (concurring)—I concur in the judgment ordered on the first ground stated. I do not think the acts of the taxing officers were arbitrary or capricious.