[No. 10703.  *En Banc.*  August 21, 1913.]

SPOKANE & INLAND EMPIRE RAILROAD COMPANY, *Appellant,*
v. SPOKANE COUNTY *et al., Respondents.*[1]

TAXATION—RAILROADS—VALUATION OF OPERATING PROPERTY—FIND-
INGS OF PUBLIC SERVICE COMMISSION—TIME FOR VALUATION.  Notwith-
standing that it was the duty of the state board of tax commissioners,
under Rem. & Bal. Code, §§ 9150, 9204, to make an annual assessment
of the operating property of railroad companies for the purposes of
taxation and make return thereof to the board of equalization prior
to its annual meeting on the first Monday of September, to be
equalized and apportioned in case the public service commission had
not previously determined the valuation thereof, as provided by Laws
1911, p. 601, § 92, making the latter valuation conclusive for the pur-
poses of assessment for taxation, a valuation fixed by the public
service commission, on the 21st day of September, while the board of
equalization was in session and prior to its final action on the valua-
tion of any given railroad, is in time to be controlling and conclu-
sive upon the state board of equalization for the current year, where
the state board of tax commissioners had not made any assessment;
and notwithstanding Rem. & Bal. Code, § 9147, providing that the
value of railroad property for assessment shall be made as of the
same time as the value of general property, which is assessed as of
March 1, under Id., §§ 9091, 9101.

SAME — VALUATION — FINDINGS OF PUBLIC SERVICE COMMISSION —
PENDENCY OF REVIEW OR APPEAL—RES JUDICATA.  In such a case, the
fact that proceedings had been taken and were pending in the su-
perior court to review the valuation of the public service commis-
sion, does not affect the conclusiveness of the valuation for assess-
ment purposes in that year; since the finding of the public service
commission had all the force and effect of a judgment, review of
which in the courts, pursuant to Laws of 1911, p. 601, § 92, must be
upon the evidence and exhibits taken before the commission (as in a
case of a review of the statement of facts on appeal from a judg-
ment); the pendency of which does not, accordingly, affect the plea
of *res judicata* or stay or suspend the judgment; especially since the
law provides no steps, and nothing was done, to secure a supersedeas
or stay.

SAME—VALUATION—FINDINGS OF PUBLIC SERVICE COMMISSION—RE-
VIEW—TRIAL DE NOVO.  A review by the superior court of the find-
ings of the public service commission upon the valuation of the
operating property of a railroad company, is not in the strict sense

[1]Reported in 134 Pac. 688.

a trial *de novo*, since the inquiry as to the correctness, reasonableness and lawfulness of the findings is upon the evidence and exhibits taken before the commission.

STATUTES—SUBJECTS AND TITLES.   An act entitled "An act relating to public service properties and utilities, providing for the regulation of the same  . . . ." is sufficiently broad to include, as germane thereto, the provisions of Laws 1911, p. 601, § 92, empowering the public service commission to fix the valuation of the operating property of railroad companies for the purposes of assessment for taxation, and making the same conclusive on the taxing boards of the state.

TAXATION — UNIFORMITY AND EQUALITY — RAILROAD PROPERTY — TIME FOR VALUATION.   The guarantees of Const., art. 7, §§ 1, 2, 3, requiring all property to be taxed in proportion to its value, that the legislature shall provide by law a uniform and equal rate of assessment, and shall provide for assessing and levying taxes on all corporate property as near as may be by the same methods as are provided for the assessing and levying of taxes on individual property, are not violated by Laws 1911, p. 601, § 92, providing that the public service commission shall value the operating property of railroad companies, and that such valuation shall be conclusive for the purposes of assessment and taxation, where the law required the valuation to be determined by its "market value" and the general laws (Rem. & Bal. Code, § 9112) required all other property to be assessed by county assessors by determining its "true and fair value in money," the true and cash value to be that at which the property would be taken in payment of a just debt from a solvent debtor; since both laws require the value to be measured by the same standard, and the legislature may permit different classes of property to be assessed at different times.

TAXATION—RAILROADS—VALUATION —EQUALIZATION — STATUTES— CONSTRUCTION.   Laws 1911, p. 601, § 92, making the valuation by the public service commission of the operating property of railroads conclusive for the purposes of assessment and taxation, is not mandatory in the sense that it deprives the state board of equalization of the power to "equalize" the assessment with the assessment of other property in the state, even by reducing the valuation, if necessary; and a complaint alleging that the state board of equalization adopted the valuation of the public service commission does not charge that they failed to equalize it.

Appeal from an order of the superior court for Spokane county, Sullivan, J., entered June 3, 1912, upon sustaining a demurrer to the complaint, dismissing an action to enjoin the collection of a tax.   Affirmed.

*Graves, Kizer & Graves,* for appellant.

*John L. Wiley* and *O. J. Saville,* for respondents.

PARKER, J.—The plaintiff seeks to have the valuation placed upon its operating property by the state board of tax commissioners and the state board of equalization in the year 1911 decreed to be unwarranted, arbitrary and illegal in amount; to have the county treasurer of Spokane county enjoined from collecting taxes due Spokane county computed upon the value so placed upon its operating property; and to compel the county treasurer to accept payment of its taxes due Spokane county computed upon a less valuation, which it alleges to be the value of its operating property in Spokane county. The superior court having sustained a demurrer interposed by the county and its treasurer to the plaintiff's complaint, and the plaintiff having elected to not plead further, judgment of dismissal was entered against it accordingly, from which it has appealed.

The facts pleaded in appellant's complaint, upon which it rests its right to the relief prayed for, may be summarized as follows: Appellant owns and operates an electric railway system, consisting of street and interurban railway lines, in Spokane and Whitman counties. In the years 1908, 1909 and 1910, the state board of tax commissioners assessed the operating property of the appellant in the manner provided by the act relating to the assessment of operating property of railroads, of 1907, Rem. & Bal. Code, § 9141 (P. C. 501 § 281), and following. In the year 1910, the valuation so placed upon appellant's operating property by the state board of tax commissioners was $6,500,398. At the time of making this and prior assessments by the state board of tax commissioners, the state railroad commission had not ascertained the value of appellant's property or made any findings with reference thereto, as it was authorized to do under Rem. & Bal. Code, § 8638, of the railroad commission law then in force. In the year 1911 the state board of tax com-

missioners did not, independent of the part its members took as members of the state board of equalization, place any assessed valuation upon, or make any investigation as to the value of, appellant's operating property. At a hearing before the state board of equalization on September 8, 1911, appellant was advised of the intention of the members of that board to use and adopt, as the true value of appellant's operating property for the purpose of taxation, the value which the members of that board understood would be placed upon appellant's operating property by the public service commission, successor to the state railroad commission, as authorized by the Laws of 1911, page 601, § 92. Thereafter, on September 21, 1911, before the adjournment of the state board of equalization, the state public service commission made a finding that the value of appellant's operating property within the state was $12,500,000, and thereupon the state board of equalization adopted such value as the actual value of such property within the state, and proceeded upon that basis to equalize the same with other property in the state.

No facts are pleaded in appellant's complaint attacking the procedure followed by the public service commission in determining this valuation, so that we must presume that its finding was made after hearing upon due notice to appellant as provided in the public service commission laws of 1911, p. 601, § 92, and that such finding of valuation thereupon became of full force as an adjudication of that valuation as declared by the provisions of that law. Appellant sued out a writ of review in the superior court for Spokane county against the public service commission, seeking a review of the finding upon the question of the value of its property, claiming that the value so found was excessive and unwarranted, which proceeding for review was pending and undetermined in the superior court for Spokane county when this action was determined therein. The action of the state board of equalization in determining the value of appellant's

operating property to be \$12,500,000 was not the result of any consideration on the part of either the state board of tax commissioners or of the state board of equalization as to the actual value of such property, nor was it the result of an exercise of their judgment with respect thereto; but the fixing of such value by the state board of equalization was solely the result of their adoption of the value found by the public service commission. We assume that the state board of equalization apportioned the value of the whole of appellant's operating property so determined and equalized to Spokane and Whitman counties, as provided by Rem. & Bal. Code, § 9151 (P. C. 501 § 301), to be used as a basis for computation of appellant's taxes payable to the treasurers of those counties respectively. Appellant alleges in its complaint facts to show that the finding of value made by the public service commission was unwarranted and erroneous, which allegations we may for the present concede would be sufficient to challenge the correctness of that finding were it here subject to review as it is in the review proceedings prosecuted in the superior court for Spokane county. Appellant also alleges that the value of the whole of its operating property within the state in 1911 did not exceed \$6,500,398, at which sum it was assessed in the year 1910, and that the portion of its property in Spokane county was then of the value of \$4,250,900, and insists that it is entitled to satisfy its taxes payable to the treasurer of Spokane county by payment of a sum to be computed upon that basis.

The argument of counsel for appellant proceeds upon the theory that the action of the state board of tax commissioners and the state board of equalization in fixing the value of its operating property for purposes of taxation was such an arbitrary and capricious refusal of its members to exercise their own judgment, resulting in an excessive and unwarranted valuation being placed upon its property for purposes of taxation, as entitles it to the relief prayed for in this action, under our decisions in the following cases:

*Andrews v. King County*, 1 Wash. 46, 23 Pac. 409, 22 Am. St. 136; *Templeton v. Pierce County*, 25 Wash. 377, 65 Pac. 553; *Miller v. Pierce County*, 28 Wash. 110, 68 Pac. 358; *Dickson v. Kittitas County*, 42 Wash. 429, 84 Pac. 855; *Metropolitan Bldg. Co. v. King County*, 62 Wash. 409, 113 Pac. 1114, Ann. Cas. 1912 C. 943; *Savage v. Pierce County*, 68 Wash. 623, 123 Pac. 1088. Those decisions establish the rule that the courts will interfere in behalf of a property owner and prevent the imposition of an excessive tax upon his property when it is shown to be the result of capricious and arbitrary action amounting to an actual or constructive fraud upon the rights of the property owner. The state board of equalization having adopted, without further inquiry or exercise of their own judgment as to its correctness, the findings of the public service commission made as to the value of appellant's operating property on September 21, 1911, while the state board of equalization was in session, our principal inquiry is, Was that the lawful manner of determining the value of appellant's operating property by the state board of equalization? If it was, it cannot be decided in this case that such action on the part of the board of equalization was arbitrary or unlawful.

It is first contended by counsel for appellants that, in the year 1911, the state board of tax commissioners were required by the law then controlling their duties, to assess operating property of railroad companies and exercise their own judgment as to the value of such property for purposes of taxation, and not be controlled by any finding made by the public service commission as late as September 21 in that year. The argument advanced is that such finding came too late to control the value of appellant's operating property for taxation to be made in that year. By the terms of the act of 1907, Rem. & Bal. Code, § 9141 (P. C. 501 § 281), and following, relating to the assessment of the operating property of railroad companies, it is the duty of the state board of tax commissioners to make an annual assessment

of the "operating property" of all railroad companies in the state, for the purpose of taxation, which assessment is to be equalized by the state board of equalization and apportioned to the several counties through which the lines of each of such railroads run, for the computation of taxes to be paid to the respective treasurers of such counties. By the terms of the railroad commission acts of 1907 and 1909, Rem. & Bal. Code, § 8638, it was the duty of the railroad commission to ascertain and find, after notice and hearing, the market value of the property of each railroad company "used for the public convenience within the state." No time is specified in the law for so doing, the law requiring only that the value be ascertained "as early as practicable," and that when so ascertained and found by the railroad commission, such finding "shall be conclusive evidence of the facts stated in such finding or findings as of the date of filing, under conditions then existing  .  .  ."

In the case of *State ex rel. Oregon R. & Nav. Co. v. Clausen*, 63 Wash. 535, 116 Pac. 7, we held, in substance, that the finding of the railroad commission upon the question of the value of property "used for public convenience," being the "operating property" of a railroad company, made upon due notice in pursuance of the railroad commission law, was binding for assessment and taxation purposes upon the state's taxing officers, but that the state board of tax commissioners had full power to estimate the value of such property for purposes of taxation, under the law relative to assessment of operating property of railroads, Rem. & Bal. Code, § 9141 (P. C. 501 § 281), until such time as the railroad commission may conduct a hearing and make its finding of value for the benefit of the state and of its officers. The legislature of 1911 passed the public service commission law, Laws of 1911, page 538, by which the public service commission succeeded to the powers and duties of the former railroad commission, with some additional powers. Section 92 of that law, found at page 601 of the Laws of 1911,

provides for a finding by the public service commission, upon due notice and hearing, of the value of the property of each public service company "used for the public convenience," and declares the conclusive effect of such finding as follows:

"The findings of the commission so filed, or as the same may be corrected by the courts, when properly certified under the seal of the commission shall be admissible in evidence in any action, proceeding or hearing in which the state or any officer, department or institution thereof, or any county, municipality or other body politic and the public service company affected is interested, whether arising under the provisions of this act or otherwise, and such findings when so introduced shall be conclusive evidence of the facts stated in such findings as of the date therein stated under conditions then existing, and such facts can only be controverted by showing a subsequent change in conditions bearing upon the facts therein determined.

"When the commission shall have valued the property of any public service company, as provided for in this section, nothing less than the market value so found by the commission shall be taken as the true value of the property of such company used for the public convenience for the purposes of assessment and taxation." Laws 1911, p. 604, § 92.

These provisions are the same as in the former railroad commission law, with the last quoted paragraph added referring specifically to the conclusive effect of the findings for purposes of assessment and taxation. It would seem, however, in view of our holding in *State ex rel. Oregon R. & Nav. Co. v. Clausen, supra,* that the findings made under the new law are no more conclusive than when made under the old law, so far as the duties of the state board of tax commissioners and the state board of equalization are concerned, touching the question of the value of the property for taxation purposes.

It is insisted, since § 9147 of Rem. & Bal. Code (P. C. 501 § 293), of the law relating to the assessment of the operating property of railroad companies provides that "the value of the property of railroads for assessment shall be made as

of the same time and in like manner as the value of the general property of the state is ascertained and determined," and since the value of other property is assessed as of March 1 (Rem. & Bal. Code, §§ 9091, 9101 [P. C. 501 §§ 15, 43]), that the finding of the public service commission made on September 21, 1911, comes too late to control the assessment to be made in that year. It is true that, under our decision in the *Clausen* case, *supra*, it was the duty of the state board of tax commissioners to proceed to the determination of the value of appellant's operating property and make return thereof to the board of equalization prior to its annual meeting when it convened on the first Monday in September (Rem. & Bal. Code, §§ 9150, 9204 [P. C. 501 §§ 299, 159]), in the absence of any finding having been made as to the value of appellant's operating property by the public service commission; that is, the assessing officers are to proceed to assess the value of the operating property of any given railroad company, and the assessed value so made will control until a finding of value thereof is made by the public service commission, as authorized by the public service commission law. But we think it does not follow that because the time for the making of the assessment by the tax commissioners has passed (whether that board has acted or not is immaterial here) prevents the finding of the public service commission being conclusive and binding for the purpose of assessment for taxation, if such finding be made before final action is taken by the state board of equalization upon the question of the valuation of a given railroad company's operating property. Whatever assessment may have been made by the state board of tax commissioners, or whatever steps the state board of equalization may have taken looking to the equalization of such assessment, it seems to us that, by the express terms of the public service commission law, such valuation must give way to that found by the public service commission, if such finding be made before final action of the state board of equalization, as it was made in this case.

It is manifest that the valuation for taxation purposes of the operating property of railroads is not finally made, so far as the duties of the state board of tax commissioners and the state board of equalization is concerned, until final action thereon is taken by the latter board. Hence we think it follows that the finding of value of such property, regularly made by the public service commission before such final action of the board of equalization, must be held to control the value of such property for assessment and taxation, unless such finding had been rendered of no effect because of other reasons advanced by counsel for appellant, which we will notice.

It is contended by counsel for appellant that, because of the pending proceedings in the superior court of Spokane county for the review of the finding of the public service commission as to the value of appellant's property, such finding was not final and conclusive and did not control the value for assessment purposes for the year 1911. This contention is rested upon the theory that the proceedings for review suspended the effect of the finding of the public service commission as being *res judicata*. In view of the notice and hearing provided by the public service commission law, upon which the finding of value is to be made, and the declared conclusive effect of such finding, as shown by the above quotation from § 92 thereof, it is plain that it was the legislative intent that the finding so made should have all the force and effect of a judicial determination. This being true, our holding in *Kaufman v. Klain,* 69 Wash. 113, 124 Pac. 391, seems applicable here. In that case a judgment had been appealed from and such appeal was still pending. We there said:

"The claim that there was no final judgment in the former action is founded on the fact that an appeal had been taken to this court from the judgment therein, which was pending at the time of trial in the court below of the present action. Whether the taking of an appeal from a judgment suspends its effects as *res judicata* is a question upon which the courts are divided; but we think the better reason, if not the weight

of authority, is with the holding that it is not so suspended. See, 23 Cyc. 1128, 1223."

In the earlier case of *Hennessy v. Tacoma Smelting and Ref. Co.*, 33 Wash. 423, 74 Pac. 584, remarks were made touching the *res judicata* effect of a judgment while under review in a higher court, somewhat inconsistent with the views expressed in the language above quoted. In the former case, however, the language was unnecessarily used, in view of the decision in that case turning upon another question involved, while the language above quoted pertained to the controlling question in the case. The provision of § 92 of the public service commission law, entitling a railroad company to a review of the findings of the public service commission in the superior court, is as follows:

"Any company affected by the findings, or any of them, believing such findings, or any of them, to be contrary to law or the evidence introduced, or that such findings are unfair, unwarranted or unjust, may institute proceedings in the superior court of the state of Washington in the county in which said hearing has been held, or, if held in more than one county, then in the county in which said hearing was commenced, and have such findings reviewed, and their correctness, reasonableness and lawfulness inquired into and determined. Such review shall be heard by the court without the intervention of a jury and shall be heard upon the evidence and exhibits taken before the commission and certified to by it." Laws 1911, p. 603, § 92.

There is no provision in that law for a stay or for a suspension of the force and effect of the findings of the public service commission pending review. What right of stay or suspension of the effect of the findings under Rem. & Bal. Code, §§ 1005, 1006 (P. C. 81 §§ 1735, 1737), relating to review and certiorari, a railroad company may have, we do not now decide. It is enough to note that the complaint in this case does not allege any facts showing a stay or an attempted stay of the force and effect of the finding of the public service commission pending review in the superior

court of Spokane county. Counsel for appellant insist that the finding of the public service · commission, when removed to the superior court of Spokane county for review, had the effect of carrying the whole matter there for trial *de novo*, and that therefore even the holdings followed in *Kaufman v. Klain, supra*, are not applicable as authority for holding that the findings of the public service commission as to value of appellant's property is conclusive pending a review of such finding in the superior court. The principal authority relied upon in support of this contention is the observations made by Judge Thayer of the circuit court of the United States for the eighth circuit, in *Ransom v. Pierre*, 101 Fed. 665, 669, as follows:

"The first contention of the plaintiff in error, stated above, presents a question of greater difficulty. In many cases the question has been mooted whether, when a writ of error has been sued out, or when an appeal has been taken which operates essentially as a writ of error, to review a judgment at *nisi prius*, and a supersedeas bond has been given to stay proceedings, such a judgment may be received in evidence in another suit between the same parties in support of the plea of *res judicata;* and, while the decisions upon this question have not been uniform, yet, in our judgment, the weight of judicial opinion, as well as sound reason, is that, when a case which is removed to an appellate court by a writ of error or an appeal is not there tried *de novo*, but the record made below is simply re-examined, and the judgment either reversed or affirmed, such an appeal or writ of error does not vacate the judgment below, or prevent it from being pleaded and given in evidence as an estoppel upon issues which were tried and determined, unless some local statute provides that it shall not be so used pending the appeal. A supersedeas bond merely operates to stay an execution or other final process on the judgment. It does not vacate the judgment, nor prevent either party thereto from invoking it as an estoppel."

We think that the hearing accorded to a railroad company seeking a review in the superior court is substantially the same as that accorded to an appellant in this court

where a judgment is sought to be reviewed which was rendered in an action tried in the superior court without a jury; the statutes, Rem. & Bal. Code, § 1736 (P. C. 81 § 1225), making it the duty of this court to examine the evidence shown by the statement of facts "*de novo*." It is true that the superior court is to inquire into the correctness, reasonableness and lawfulness of the findings made by the public service commission; but it is to do so only upon the evidence and exhibits taken before the commission. This, we think, is not a trial *de novo*, although it is sometimes loosely referred to as such. In Black's Law Dictionary (2d ed.), at page 328, we read:

"De novo. Anew; afresh; a second time. A *venire de novo* is a writ for summoning a jury for the second trial of a case which has been sent back from above for a new trial."

This argument of counsel for appellant would possibly be applicable to an appeal from a justice court to the superior court under our law, since such an appeal gives to the appellant the right of a new trial in the superior court. In such a case, the trial in the superior court proceeds as though the case had been commenced there, and without any presumptions arising from the judgment rendered in the justice court. It is worthy of note in this connection that the holding of this court in *Kaufman v. Klain, supra,* was made in a cause upon appeal from a determination had in the superior court upon a trial before that court without a jury in an equity case, wherein this court, as provided by statute, was required to examine the evidence preserved by the record, "*de novo*." It seems to us that the remarks of Judge Thayer above quoted, in *Ransom v. Pierre, supra,* are not inconsistent with this view, though they may not go quite so far. Besides, this exact phase of the question was apparently not necessary to be there decided. We are of the opinion that the review proceedings pending in the superior court of Spokane county did not stay the conclusive force of the finding of value made by the public service commission.

Contention is made against the validity of the provisions of § 92 of the public service commission law declaring the conclusive effect of the findings of the commission, in so far as such findings relate to value for purpose of taxation, rested upon the ground that this provision relates to a subject not expressed in the title of the act, and must therefore be held invalid in the light of § 19, art. 2 of the state constitution providing that "No bill shall embrace more than one subject, and that shall be expressed in the title." The title of the act, found on page 538 of the Laws of 1911, reads:

"An act relating to public service properties and utilities, providing for the regulation of the same, fixing penalties for the violation thereof, making an appropriation and repealing certain acts."

If this title had contained only the words "An act relating to public service properties and utilities," we think it could hardly be seriously contended that it would not have been sufficiently comprehensive to include the provisions with which we are here concerned. *State ex rel. McFadden v. Shorrock*, 55 Wash. 208, 104 Pac. 214. The argument is rested largely upon the words "providing for the regulation of the same," and proceeds upon the theory that these words necessarily negative the thought of any provision touching taxation. We are of the opinion, however, that the ascertaining of the value of the property of a railroad for purposes of taxation is so closely akin to the subject of regulation of such public service corporations as to bring this provision within the comprehensive though brief language of the title.

It is insisted that to give force to the provisions of § 92 of the public service commission act, making the finding by the public service commission conclusive for the purpose of assessment and taxation, would be to violate appellant's rights as guaranteed to it by §§ 1, 2, and 3 of art. 7 of the state constitution, providing as follows:

"All property in the state not exempt under the laws of
the United States, or under this constitution, shall be taxed
in proportion to its value, to be ascertained as provided by
law. . . .

"The legislature shall provide by law a uniform and equal
rate of assessment and taxation on all property in the state,
according to its value in money, and shall prescribe such
regulations by general law as shall secure a just valuation
for taxation of all property, so that every person and cor-
poration shall pay a tax in proportion to the value of his,
her, or its property. . . .

"The legislature shall provide by general law for the
assessing and levying of taxes on all corporation property as
near as may be by the same methods as are provided for the
assessing and levying of taxes on individual property. . . ."

Counsel for appellant state in their brief their position
upon this subject as follows:

"Under those constitutional guaranties, it is obvious that
while for some purposes the legislature may classify prop-
erty and may provide different methods of its assessment and
taxation, it may not provide a method for assessing and tax-
ing one species of property, or the property of one class
of persons, which shall impose upon such property or such
class a burden that is greater than is borne by other species
or other classes;"

and then proceed to argue that the inequality results from
this method of determining the value of appellant's property.

Under the allegations of this complaint, we are only con-
cerned with the standards of value prescribed by the two dif-
ferent laws, one governing the duties of county assessors in
assessing property in general, and the other governing the
duties of the public service commission in determining the
value of public service property, an examination of which
laws we think will show that they prescribe exactly the same
standard of value.   Rem. & Bal. Code, § 9112 (P. C. 501
§ 113), of the general revenue law of the state provides:

"All property shall be assessed at its true and fair value
in money.   In determining the true and fair value of real or

personal property, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation; nor shall he adopt as a criterion of value the price for which the said property would sell at auction, or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made. The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor."

Section 92 of the public service commission law, prescribing the duties of the public service commission relative to ascertaining the value of property of the nature here involved, reads:

"It shall also ascertain the total market value of the property of each public service company operating in this state, used for the public convenience within the state." Laws 1911, p, 601, § 92.

These provisions, in their last analysis, seem to us to plainly fix the same measure of value, which reduced to its simplest terms, is "market value." Neither the revenue laws nor the public service commission law recognize any other standard of value. It follows that these laws, if administered according to their terms, will not result in unequal values being placed upon property of different owners, nor require such owners to pay taxes other than in proportion to the value of their property, all measured by the same standard.

Counsel make some contention rested upon the difference in the time of finding of the value of public service property by the public service commission as compared to the time as of which other property is assessed; that is, the general revenue law requires assessments to be made by the county assessor as of March 1st, while the public service commission law authorizes the ascertainment of value of public service property by the public service commission at any time. An argument of some considerable length is made rested upon this conten-

tion, wherein it is ingeniously pointed out that there is possibility of different standards of value being applied by reason of fluctuations in values at different times. Our attention has, however, not been called to any authority, nor does it seem to be seriously contended, that it is not within the power of the legislature to permit certain classes of property to be assessed at one time and other classes at another time, even under our uniform constitutional taxation provisions. We are unable to see that there is any want of power in the legislature to so provide, as it seems clearly to have done so by these laws.

Some contention is made, in view of the apparently mandatory provision of § 92 of the public service commission law as to the conclusive effect to be given to the commission's finding of value, that appellant is deprived of the benefit of equalization which is accorded to other property owners. It is worthy of note in this connection that the allegations of appellant's complaint are that:

"The public service commission  .  .  .  made a finding that the value of such property was $12,500,000, and thereupon the state board of equalization fixed such value as the actual value of plaintiff's operating property within the state, and proceeded upon that basis in equalizing the value of plaintiff's property with other property in the state."

This, we think, is an allegation that the state board of equalization did equalize the value of appellant's property with other property in the state. This, we are constrained to hold, the board of equalization had the power to do, notwithstanding the seeming mandatory language of § 92 of the public service commission law. That is, the state board of equalization was not, by the seeming mandatory provisions of that section, deprived of the power of equalizing the value of appellant's operating property, as found by the public service commission, with other property in the state, even by finally reducing such value, to that end. This is the logic of our decisions in *State ex rel. Oregon R. & Nav. Co. v. Clausen*, and *Savage v. Pierce County, supra*. In the *Savage*

case we said, "Uniformity is the highest and most important of all requirements applicable to taxation under our system." The language of § 92 of the public service commission law fixing the measure of value of railroad operating property for taxation is no more mandatory than the language of Rem. & Bal. Code, § 9112 (P. C. 501 § 113), of the general revenue law fixing the measure of value of other property for taxation. We are unable to see that the allegations of appellant's complaint negative equalization being properly made by the state board of equalization. The substance of appellant's complaint seems to be the adoption of an excessive market value rather than want of equalization following the adoption of such value. We do not find in the complaint any charge of other property being assessed other than as the general revenue law directs, to wit, at its "market value"; and the fact that appellant's operating property was of the *market* value of $12,500,000 is rendered conclusive for our present purposes by the finding of the public service commission, though, as we have seen, that is not conclusive upon the board of equalization as the final *equalized* value.

The order of the superior court sustaining the demurrer and dismissing the case is affirmed.

MOUNT, ELLIS, MORRIS, FULLERTON, and MAIN, JJ., concur.