[No. 13590-6-II.   Division Two.   May 5, 1992.]

WINCHELL'S DONUTS, *Appellant*, v. ROSE MARIE (WEIR) QUINTANA, *Respondent*.

526

*Craig Alan Staples* and *Roberts Reinisch,* for appellant.

*Ernest Lee Nicholson,* for respondent.

MORGAN, J. — Winchell's Donuts, a self-insured employer under the workers' compensation act, appeals a judgment ordering it to provide vocational rehabilitation services to Rose Marie Quintana. We reverse.

In 1971, the Legislature authorized vocational rehabilitation when "necessary and likely to restore the injured workman to a form of gainful employment". Laws of 1971, 1st Ex. Sess., ch. 289, § 12; former RCW 51.32.095(1). In 1982, it additionally provided that vocational rehabilitation should be provided to "qualified injured workers", Laws of 1982, ch. 63, § 1; former RCW 51.41.010, and that a qualified injured worker was one who, among other things, "[i]s permanently

precluded or likely to be precluded from engaging in the usual occupation or position in which the worker was engaged at the time of injury". Laws of 1982, ch. 63, § 2; former RCW 51.41.020.

In April 1985, effective May 16, 1985, the Legislature repealed RCW 51.41 (Laws of 1985, ch. 339, § 5) and amended RCW 51.32.095(1) so as to authorize vocational rehabilitation only when "necessary and likely to enable the injured worker to become employable at gainful employment". Laws of 1985, ch. 339, § 2; RCW 51.32.095(1). Thereafter, the Department of Labor and Industries adopted a regulation defining "gainful employment" as "any occupation . . . which allows a worker to be compensated with wages or other earnings . . . ." WAC 296-18A-420(2). As the parties correctly point out, the net effect of these changes was that before May 16, 1985, an injured worker was qualified for vocational assistance if her work-related injury precluded her from engaging in her *usual* occupation; on and after May 16, 1985, an injured worker was qualified to receive vocational assistance if her work-related injury precluded her from engaging in *any* occupation.

In addition to setting out new criteria for vocational rehabilitation services, the 1985 Legislature directed how the transition from old to new criteria would take place. It provided:

> Nothing in RCW 51.32.095 or in the repeal of chapter 51.41 RCW by section 5, chapter 339, Laws of 1985 shall be construed as prohibiting the completion of vocational rehabilitation plans approved under this title prior to May 16, 1985. Injured workers referred for vocational rehabilitation services under this title, but for whom vocational rehabilitation plans have not been approved by the department under this title before May 16, 1985, may only be provided vocational rehabilitation services, if applicable, by the department according to the provisions of RCW 51.32.095.

Former RCW 51.32.098; Laws of 1985, ch. 339, § 4. Hereafter, we refer to RCW 51.32.098, the amendment of RCW 51.32.095(1), and the repeal of RCW 51.41 as the 1985 enactments.

With this background in mind, we turn to the facts. Quintana sustained a work-related injury on April 5, 1980, while employed by Winchell's. She made a workers' compensation claim, and the Department of Labor and Industries ordered Winchell's to provide her with vocational rehabilitation services. Winchell's complied until June 1984,[1] when it notified Quintana that her vocational rehabilitation services would be terminated on the ground that she was no longer qualified to receive them.

Quintana appealed to the Department and prevailed. Winchell's then appealed to the Board, and on January 7, 1985, the Board denied the appeal, finding that Quintana continued to be eligible for vocational rehabilitation services. Winchell's did not appeal again, but instead referred Quintana to a vocational assistance provider so that a vocational rehabilitation plan could be prepared. The plan was not completed by June 1985,[2] however, and in that month the vocational assistance provider determined that Quintana was employable in four occupations even without vocational rehabilitation. Winchell's then notified Quintana that vocational rehabilitation services would be terminated pursuant to the 1985 enactments that had taken effect the previous month.

Quintana protested to the Department, but in October 1985, it approved the termination of services. Using the 1985 enactments, it found that she was employable in four occupations and concluded that she was not eligible for vocational services.

---

[1] During this period of time, there was a considerable amount of administrative maneuvering not pertinent here.

[2] Quintana argues that she actually received approval of a vocational plan prior to May 16, 1985. She correctly points out that she was found qualified for vocational services in December 1983 and January 1985. She then asserts that these findings were equivalent to approval of a plan. However, the law in effect prior to May 16, 1985, specifically defined an "approved" plan as one approved by the Office of Rehabilitation Review, former RCW 51.41.030(3), former RCW 51.41.040, former WAC 296-18-100(4), and that office never approved a plan for Quintana. Thus, her argument fails.

Quintana appealed the Department's decision to the Board of Industrial Insurance Appeals. In April 1987, the Board affirmed the Department.

Quintana then appealed the Board's decision to the Superior Court, and that court reversed the Board. It held that by virtue of the Board's January 7, 1985, order, Winchell's was collaterally estopped[3] from contending that Quintana was not a qualified injured worker, and that Quintana was entitled to preparation and implementation of a vocational rehabilitation plan pursuant to standards in existence before May 16, 1985. Winchell's then appealed to this court.

On appeal, Quintana asserts that the 1985 enactments are inapplicable to her case. In support of this position, she makes two major arguments. First, she says that the Board's January 7, 1985, order became res judicata before May 16, 1985, the date on which the 1985 enactments took effect. Second, she says that once the Board's order was res judicata, the Legislature lacked the power to change it. She concludes that the criteria in effect prior to May 16, 1985, are the ones applicable to her case.

Like most Latin jargon, the term res judicata does not very clearly describe the questions it encompasses. Those questions include: (1) Did a previous judgment or order become final in the sense that it acquired potential preclusive effect, and if so, when did that occur? (2) If a previous judgment or order became final in the sense of that it acquired potential preclusive effect, then does it preclude the particular subsequent proceeding now before the court? Before an affirmative answer can be rendered to the second question, there must be identical issues, the party against whom preclusion is asserted must have been a party to or in privity with a party to the prior adjudication, and preclu-

---

[3]The trial court's conclusions of law use only the word "estopped". However, both briefs on appeal extensively discuss collateral estoppel and res judicata, and neither mentions equitable estoppel or estoppel in pais. Thus, it seems clear that the trial court's reference was to collateral estoppel, as opposed to equitable estoppel or estoppel in pais. The distinction is discussed in 1B J. Moore, *Federal Practice* ¶ 0.405[8], at 238 (2d ed. 1983).

sion must not work an injustice on the party against whom it is to be applied. *Shoemaker v. Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987); *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987); *Malland v. Department of Retirement Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985); *see* 1B J. Moore, *Federal Practice* ¶¶ 0.409-0.411 (2d ed. 1983).

■ ■ The first question is dispositive here.[4] A quasi-judicial order of the Board of Industrial Insurance Appeals acquires preclusive effect to the same extent as the judgment of a court. *LeBire v. Department of Labor & Indus.*, 14 Wn.2d 407, 415, 128 P.2d 308 (1942). The judgment of a court acquires potential preclusive effect, as opposed to precluding a particular later proceeding, when it first becomes final as opposed to interlocutory. *Lejeune v. Clallam Cy.*, 64 Wn. App. 257, 265, 823 P.2d 1144 (1992); *see Columbia Rentals, Inc. v. State*, 89 Wn.2d 819, 821, 576 P.2d 62 (1978) (final judgment is res judicata); *Pinkney v. Ayers*, 77 Wn.2d 795, 796, 466 P.2d 853 (1970) (interlocutory order is not res judicata); 1B J. Moore, *Federal Practice*, at 180-81 (objective of res judicata is finality); Restatement (Second) of Judgments §§ 13, 17 (1982); Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 Wash. L. Rev. 805, 806, 822 (1984-1985). Generally, a judgment becomes final as opposed to interlocutory at the beginning of the appellate process. *Riblet v. Ideal Cement Co.*, 57 Wn.2d 619, 621, 358 P.2d 975 (1961) (judgment of court); *Spokane & I.E.R.R. v. Spokane Cy.*, 75 Wash. 72, 81-82, 134 P. 688 (1913) (administrative judgment), *appeal dismissed*, 238 U.S. 642 (1915); *Lejeune v. Clallam Cy.*, 64 Wn. App. at 265.

■ Given these principles, Quintana's first argument cannot succeed. Its premise is that Winchell's had a right to appeal the Board's January 7, 1985, order, and that when it failed to do so, the order became final in the sense of precluding further proceedings between the same parties

---

[4]The parties focus on whether the issues before the Board in January 1985 and April 1987 were identical. We assume that they were, but we still cannot apply res judicata without considering whether the Board's January 7, 1985, order was final in the sense of acquiring preclusive effect.

related to the same issue. The premise is flawed, however, for Winchell's was neither required nor permitted to appeal the Board's January 7, 1985, order.

In January 1985, former RCW 51.41.060, Laws of 1982, ch. 63, § 6, was still in effect. It provided:

> (1) If a determination of ineligibility is unacceptable to a worker or employer, or if a vocational rehabilitation plan is unacceptable to a worker or employer, the worker or employer may petition the supervisor of industrial insurance to review the decision. The supervisor, or the supervisor's designee, shall render a final decision within thirty days of receipt of the petition for review.
>
> (2) The worker or employer may appeal a final decision of the supervisor, or the supervisor's designee, to the board of industrial insurance appeals for an expedited appeal which shall be heard as provided in this section. . . . A final decision [shall be] rendered within thirty days of the closing of the hearing proceeding . . .. Further appeals taken from the final decision of the board shall be governed by the provisions relating to judicial review of administrative decisions contained in RCW 34.04.130 and 34.04.140 as now existing or hereafter amended. . . .

Under this statute, the date on which an employer was required to appeal varied according to whether the worker was found eligible or ineligible for vocational services. When a worker was determined to be ineligible, the statute gave the employer the right to petition for review of that decision by the supervisor of industrial insurance, and if still aggrieved thereafter, to further appeal to the Board and the courts. But when a worker was determined to be eligible, the statute did not give the employer the right to petition for review, or to appeal. Instead, it provided that the employer would have that right at such time as the worker was awarded a vocational rehabilitation plan that the employer found unacceptable.[5]

Under the plain terms of this statutory scheme, Winchell's had no right to appeal following the Board's determination

---

[5]Parenthetically, we note that it is not unusual for a right of appeal to flow from only one of two converse results. For instance, an order granting summary judgment is often appealable, while an order denying summary judgment often is not.

that Quintana was eligible for services. Rather, it had to wait,
see what sort of vocational rehabilitation plan was worked
out, and then appeal if it found that plan unacceptable. The
Board's January 7, 1985, order remained interlocutory until
such time as a plan was adopted, and because none ever was,
the Board's January 7 order was still interlocutory when the
1985 enactments took effect on May 16, 1985.

■ Because the Board's January 7 order was interlocu-
tory on May 16, 1985, this case is subject to the 1985 enact-
ments. The Legislature has power to change the criteria for,
or even eliminate, workers' compensation benefits after an
industrial injury has occurred but before entry of final judg-
ment.[6] *Mattson v. Department of Labor & Indus.*, 176 Wash.
345, 348, 29 P.2d 675, *aff'd*, 293 U.S. 151 (1934); *Robinson
v. McHugh*, 158 Wash. 157, 163-64, 291 P. 330 (1930). It
exercised this power when it passed the 1985 enactments,
and it specifically stated that the new criteria would apply
to all vocational rehabilitation cases in which no plan had
been approved by May 16, 1985. Quintana's case was one of
those, and thus the 1985 enactments apply to it.

Quintana was not entitled to have vocational services con-
tinued after the Legislature changed the law in May 1985.
The 1985 version of RCW 51.32.095(1) provided that on and
after May 16, 1985, a worker would be entitled to vocational
services only if he or she was disabled from performing any
occupation. Quintana was able to perform four occupations.[7]
Therefore, she was not entitled to have services continued.

We conclude that the trial court erred when it ruled that
Quintana was entitled to have services completed under

---

[6]By making this statement, we do not mean to imply that the Legislature
cannot change workers' compensation benefits after final judgment. We have no
occasion to consider that question here.

[7]Quintana does not dispute the finding that she was able to perform four
occupations. Although Winchell's characterizes her as arguing that the Board
abused its discretion when it found that she could perform certain occupations,
she actually argues only that the Board abused its discretion when it determined,
in alleged contravention of res judicata and her vested rights, that the 1985
enactments governed her case.

criteria in effect in January 1985,[8] and that the Board did not err when it applied the 1985 enactments to her case. We reverse the judgment of the Superior Court and reinstate the judgment of the Board.

PETRICH, C.J., and ALEXANDER, J., concur.

Reconsideration denied July 14, 1992.

Review denied at 120 Wn.2d 1017 (1992).

---

[8]The trial court also erred when it found that Quintana was entitled to a continuation of loss compensation benefits. If Quintana was not entitled to vocational services, she also was not entitled to time loss compensation. *See* RCW 51.32.095(3) (compensation payable while worker is actively undergoing a formal program of vocational rehabilitation).