[No. 1280.   Decided October 22, 1894.]

THE WASHINGTON NATIONAL BANK OF SEATTLE, *Appellant*, v. THE COUNTY OF KING AND BYRON PHELPS, *County Treasurer and ex-officio Tax Collector of said County*, *Respondents*.

[No. 1281.   Decided October 22, 1894.]

THE COMMERCIAL NATIONAL BANK OF SEATTLE, *Appellant*, v. THE COUNTY OF KING AND BYRON PHELPS, *County Treasurer and ex-officio Tax Collector of said County*, *Respondents*.

[No. 1282.   Decided October 22, 1894.]

THE WASHINGTON NATIONAL BANK OF SEATTLE, *Appellant*, v. THE CITY OF SEATTLE AND ADOLPH KRUG, *Tax Collector of said City*, *Respondents*.

[No. 1283.   Decided October 22, 1894.]

THE COMMERCIAL NATIONAL BANK OF SEATTLE, *Appellant*, v. THE CITY OF SEATTLE AND ADOLPH KRUG, *Tax Collector of said City*, *Respondents*.

[No. 1284.   Decided October 22, 1894.]

THE FIRST NATIONAL BANK OF SEATTLE, *Appellant*, v. THE CITY OF SEATTLE AND ADOLPH KRUG, *Tax Collector of said City*, *Respondents*.

[No. 1285.   Decided October 22, 1894.]

THE BOSTON NATIONAL BANK OF SEATTLE, *Appellant*, v. THE CITY OF SEATTLE AND ADOLPH KRUG, *Tax Collector of said City*, *Respondents*.

[No. 1286.   Decided October 22, 1894.]

THE NATIONAL BANK OF COMMERCE OF SEATTLE, *Appellant*, v. THE CITY OF SEATTLE AND ADOLPH KRUG, *Tax Collector of said City*, *Respondents*.

[No. 1287.  Decided October 22, 1884.]

THE PUGET SOUND NATIONAL BANK OF SEATTLE, *Appellant*, v. THE CITY OF SEATTLE AND ADOLPH KRUG, *Tax Collector of said City, Respondents.*

[No. 1288.  Decided October 22, 1894.]

THE SEATTLE NATIONAL BANK, *Appellant*, v. THE CITY OF SEATTLE AND ADOLPH KRUG, *Tax Collector of said City, Respondents.*

TAXATION—NATIONAL BANK SHARES—INJUNCTION—CONSTRUCTION OF REVENUE ACT.

A complaint in an action to restrain the collection of a tax against a national bank, on the ground that it is unequal and unjustly discriminates against that class of property, does not state a cause of action when it alleges that there was existing in a certain county of the state "taxable moneyed capital (other than that invested in national and other incorporated banks) owned by individual citizens of said state, resident in said county, and there invested in interest bearing loans, discounts and securities to them payable and owing by other citizens of said state residing in said county, of vast amount,  .  .  .   the same being all the moneyed capital in the state owned by resident individual citizens and invested as aforesaid in interest bearing loans, discounts and securities except that owned by and invested in incorporated banks located in this state," and that all such moneyed capital "was purposely omitted from assessment and from taxation" by the taxing officers throughout the state.

Construing all the provisions of the revenue law of 1893 together, and considering §§ 75 and 136 (Laws, 1893, pp. 356, 385), the effect of the repealing section of that law is simply to make the act of 1893 a future revenue law, leaving unpaid taxes under former laws to be collected either as prescribed in those laws, or according to the new methods of the later law, when it is so directed.

*Appeal from Superior Court, King County.*

*Preston, Carr & Preston* and *James B. Howe*, for appellant.

*W. T. Scott, F. A. Steele, John F. Miller, A. G. McBride (S. H. Piles* and *George Donworth*, of counsel), for repondents.

The opinion of the court was delivered by

STILES, J.—The complaints in these cases were drawn with a view to obviate the objections sustained to the complaint in *First National Bank of Aberdeen v. County of Chehalis*, 6 Wash. 64 (32 Pac. 1051). This endeavor is made by the allegation that certain taxable moneyed capital, alleged in the former case to be "owned by citizens of said state resident in said county, and there invested in loans and securities to them payable and owing by other citizens of said state residing in said county," is "owned by *individual* citizens of said state, resident in said county (or city) and there invested in *interest bearing* loans, *discounts* and securities to them payable and owing by other citizens of said state residing in said county (or city), of vast amount." It is also alleged in these cases that the capital referred to is "all the moneyed capital in the state owned by resident individual citizens and invested as aforesaid in interest bearing loans, discounts and securities except that owned by and invested in incorporated banks located in this state," and that it was purposely omitted from assessment and taxation.

In these cases our attention is particularly called again to the case of *Boyer v. Boyer*, 113 U. S. 689 (5 Sup. Ct. 706), and it is claimed that the allegations contained in the complaints before us, as well as in the case of *First National Bank of Aberdeen v. County of Chehalis, supra,* are equally as strong as those of the Boyer case in which the federal supreme court held that answer should be made to the allegations of the bill. While, as was remarked in *Mercantile Bank v. New York*, 121 U. S. 138 (7 Sup. Ct. 826), in the *Boyer case* no attempt was made "to define the meaning of the words 'moneyed capital in the hands of individual citizens' as used in the statute, or to enumerate all the various kinds of property or investments that

39—9 WASH.

came within its description, or to show that shares of stock in the hands of stockholders of every institution, company or corporation of a state, having a capital employed for the purpose of earning dividends or profits for its stockholders, were taxable as moneyed capital in the hands of individual citizens,'' it was made to appear in the former case that the burden of county taxation had, by the Pennsylvania act of 1844, been removed from a large body of certain specific moneyed capital which came into competition with capital invested in national banks, and that, therefore, a discrimination existed against the latter. The capital exempted for purposes of local taxation was made taxable for state purposes, but the stock of national banks was by the Pennsylvania act of 1870 taxable both for state and county purposes. In this a discrimination was held to exist, and for that reason an answer was required to the bill.

But, whatever may be said of the decision in *Boyer v. Boyer*, it seems clear to us that the case of *Mercantile Bank v. New York*, while it does not overrule the decision in the former case, so clearly sets forth the principles upon which alone the question of what is ''moneyed capital in the hands of individual citizens'' can be decided, that it is at least doubtful whether a like ruling would have been made had the two cases been considered together, at least as to some of the items set forth in the bill. The facts upon which the court ruled in *Mercantile Bank v. New York* are clearly set forth on page 146 of the report, and it is held that no discrimination existed by reason of the exemption of certain capital from taxation in the state of New York because, according to subsequent definitions laid down in the decision, it does not constitute ''moneyed capital in the hands of individual citizens'' within the meaning of the act.

Now, in the cases before us, it may be that the allega-

tion that the unassessed capital being "all the moneyed capital owned by resident individual citizens, and invested in interest bearing loans, discounts and securities, except that owned by and invested in incorporated banks" may include capital the exemption of which would create a discrimination as against that of national banks, provided the amount of the exemption was great enough in volume to be considered material. But the difficulty with the complaints is that they are general in their language, and do not set forth with the particularity even of the Boyer case the classes of unassessed moneyed capital with clearness sufficient to enable the court to say that any material quantity of moneyed capital coming into competition with that of national banks has been left unassessed.

The only attempts made in the complaints to designate the classes of capital alleged to have been exempted by the assessors is through the allegation that moneyed capital invested in the stocks and bonds of insurance, wharf and gas companies, is not intended to be included in the term "moneyed capital" as used by the pleader. Now, without attempting an analysis, it is clear from the Mercantile Bank case that investments of money can be made in various ways, and even in loans and discounts, without necessarily bringing such investments within the term "moneyed capital" as used in the act of congress. The conclusion of the whole matter seems to us to lie in the language used by the supreme court of the United States in this wise :

"The terms of the act of congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of the business, reduced again to money and reinvested. It includes money

in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and reinvestment.''

It is moneyed capital of this class, employed in carrying on operations of the same character as those which are within the powers of national banks, which comes into competition with the business of national banks, and such capital in the hands of individual owners is what is intended to be described by the act of congress, and until it appears that there is some considerable amount of moneyed capital of this kind employed in this way, which is exempted by operation of law, or by the wilful act of the assessors, a case is not made showing a discrimination against national banks.

A further point is made in this case, viz., that the revenue law of 1893 (Laws, p. 323) unconditionally repealed the revenue law of 1891 (Laws, p. 280), and contains no saving clause covering uncollected taxes on personal property, and that, therefore, the treasurers of the county of King and of the city of Seattle, are without power or authority to proceed with the collection of such taxes.    It is true that § 137 (Laws 1893, p. 385) of the revenue law of 1893, in sweeping terms, repeals all acts theretofore enacted providing for the assessment and collection of taxes.    The unpaid taxes on real property are clearly saved by the terms of § 136 (p. 385), but, if the taxes on personalty are preserved at all, the saving clause is found in § 75 of the act.    It cannot be presumed for a moment that it was the intention of the legislature to release unpaid taxes from so recent an assessment as that of the year 1891, and we think it would be the duty of this court to construe any even doubtful provisions which might be found in the act of 1893 as fairly tending to show an intention on the part

of the legislature to preserve the right to collect unpaid taxes, notwithstanding the repeal of all former laws on the subject of taxation.   Now, § 75 (p. 356) occurs in a portion of the act which is unquestionably devoted to the future operation of the law, and with other sections it lays out a complete scheme for the assessment and collection of taxes on personal property, and as a finale to the whole, and notwithstanding that the matter contained in § 73 (p. 355) would seem to terminate the power of the treasurer to collect personal taxes after the lapse of a limited period, § 75 seems to continue both the power and the duty of the treasurer, and his successors in office, indefinitely until the taxes have been paid.   At the close of this section occurs these words:  "This section shall apply to all assessment rolls and the warrants thereto attached which have been heretofore issued, upon which taxes may be due and unpaid, as well as those hereafter issued," which is to say, in the language of the first part of the section, that the "power and duty" to collect any personal property tax due and unpaid shall continue in and devolve upon the county treasurer, and his successors in office, until the tax is paid. Now, if the power and duty remain with the treasurer, then, notwithstanding the terms of the repealing section, the act of 1891 must be continued in existence so far as may be necessary to the exercise of that power and the performance of that duty, since without the existence of the law the treasurer has neither power to act nor duty to perform. The various sections of the act must be construed together, and harmonized, if possible, so that if it were impossible to say that this power and duty should continue in the treasurer in view of the positive terms of the repealing section then, of course, the latter section being the last in the act would prevail;  but as it is not unreasonable both can stand. Taking it all and all, and considering §§ 75 and 136, the effect of the repealing section is simply to make the act of

1893 a future revenue law, leaving unpaid taxes under former laws to be collected either as prescribed in those laws or according to the new methods of the later law when it is so directed.

The judgment of the superior court sustaining the demurrers will be affirmed.

DUNBAR, C. J., and ANDERS, SCOTT and HOYT, JJ., concur.