[No. 12452. *En Banc.* March 22, 1915.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v. THE
STATE OF WASHINGTON *et al., Respondents.*[1]

TAXATION—RAILROADS—VALUATION OF PROPERTY—INTANGIBLE ELE-
MENTS. The intangible value inhering to railroad operating property,
arising from density of traffic and volume of business along the line,
the nature of the country through which the line runs, the facilities
for transacting railroad business owned and operated by private in-
dividuals, the price of its fuel supply, the resources of the country
adjacent to the line, and the density of the population living contigu-
ous thereto, is not the same as the personal element of "good-will"
which attaches to business concerns counducted by private parties,
but these elements add to the value of the property the same as lo-
cality may give enhanced value to real estate.

TAXATION—RAILROADS—VALUATION — ELEMENTS — INTANGIBLE IN-
TERESTS—ASSESSMENTS—UNIFORMITY—STATUTES.   Under Rem. & Bal.
Code, §§ 9141 and 9148, providing that the state board of tax commis-
sioners, in valuing, for the purposes of assessment, all the operating
and other real and personal property of a railroad company, shall
consider the value of the entire system and of the part within the
state, together with such facts as will enable a substantially correct
determination of its assessment value to be had, subject to revision
by the state board of equalization, and under 3 Id., § 8626-92, provid-
ing that, when the public service commission shall have valued the
property of any company, nothing less than the market value as found
shall be taken as the true value of property used for public conven-
ience for the purposes of taxation, the assessing officers, after de-
termining the cost of reproduction of a railroad's property to be
$109,267,908, and the actual cash market value to be $98,016,646, may
further take into consideration the density of traffic and volume of
business along the company's lines in this state, the nature of the
country through which it runs, its facilities for transacting railroad
business owned and operated by private individuals, such as ware-
houses and docks, the price at which it purchases its fuel supply by
reason of the location of coal mines, and the resources and develop-
ment and population of the adjacent country, and having determined
the value of such elements to be $12,291,805, may add the same to
the previously found valuation; and such action is not unauthorized
or discriminatory as an assessment of the company's "good-will,"
not assessed against other concerns, nor would it be the application
of an unlawful measure of value by a different standard than that

[1]Reported in 147 Pac. 45.

applied by the county assessors to the property of other concerns; since it includes, rather, that intangible element which enters into and enhances the value of real property by reason of its location, its peculiar adaptability to particular uses, inseparable from the physical property itself, and constituting a substantial portion of the value of the operating property and of the road as a whole.

TAXATION—ASSESSMENT—METHOD—CHANGE IN LAW. Where all the valuations for the assessment of property for the current year were completed in May, on the standard of the "market value" of the property, a change of the law going into effect in June, requiring property to be assessed on the basis of one-half of its value, does not affect the assessment for the current year, or authorize the board of equalization, at its sessions subsequent to the going into effect of the new law, to deviate from the standard of valuation in effect at the time the assessments were made.

TAXATION—CONSTITUTIONAL PROVISIONS—EQUALITY AND UNIFORMITY—DUE PROCESS. The assessment of railroad property as an organized entity, including certain elements of intangible value inhering therein, while the general mass of business property has been assessed on the basis of the value of each parcel of real and item of personal property separately considered, is not a violation of the rule of uniformity required by art. 7 of the state constitution; nor is it in violation of art. 14 of amendments to the Federal constitution as to due process and equal protection of the laws.

SAME. The assessment of railway operating property as a unit by the state board of tax commissioners instead of by the county assessors as other property is assessed under the general revenue laws, does not violate art. 7, § 3, of the state constitution that taxes on corporation property shall be assessed and levied as near as may be by the same methods employed for individual property, so long as corporate property is charged the same rate of levy and its assessed value measured by the same standard as other property within the state.

TAXATION—ASSESSMENT—EXCESSIVE VALUATION. In the absence of a showing of actual fraud on the part of the taxing officers, courts ought not to interfere with an assessment charged as being excessive, where the difference between the assessed value and the alleged actual value is less than ten per cent.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered September 10, 1914, dismissing an action to recover taxes paid under protest, upon sustaining a demurrer to the complaint. Affirmed.

*Geo. T. Reid, J. W. Quick*, and *L. B. daPonte*, for appellant.

*The Attorney General* and *Edward W. Allen, Assistant*, for respondents.

PARKER, J.—This action was commenced in the superior court for Thurston county by the Northern Pacific Railway Company against the state of Washington and the counties through which the company's lines of railway are maintained, seeking to compel the acceptance by the several county treasurers, in full payment of the general tax payable by the railway company for the year 1913, sums computed upon a less valuation of its property than that which was assessed by the state board of tax commissioners and equalized by the state board of equalization as the value of such property for purposes of taxation for that year. Before final disposition of the case in the superior court, the railway company, to avoid the accumulation of interest and penalties, paid to the several county treasurers the full amounts claimed by the defendants to be due, which payments were made under protest. These facts, occurring after the filing of the original complaint, were pleaded by supplemental complaint, which concluded with a prayer for money judgments for the amounts of excess thus so claimed to have been paid by the railway company. This prayer was in lieu of the equitable relief prayed for in the original complaint. The defendants demurred to the complaint upon the ground that the facts therein stated are not sufficient to constitute a cause of action. The superior court sustained the demurrer, and the railway company electing to stand upon its complaint and not plead further, judgment of dismissal was accordingly entered against it. From this disposition of the cause, the railway company has appealed to this court.

Before proceeding to analyze the facts as stated in the complaint, the sufficiency of which to entitle the appellant to relief is the problem here for solution, we may state that ap-

pellant's contention, stated generally, is that the assessing of
its property by the state board of tax commissioners, and
equalization thereof by the state board of equalization, in
the year 1913, was excessive in amount to the extent of
$12,291,805 over and above the amount such property
should have been valued at for purposes of taxation in that
year. This result, it is insisted, was brought about by the
erroneous and arbitrary action of these boards, amounting,
at least, to a constructive fraud upon appellant's rights in
the premises. As we proceed, we think it will be made ap-
parent that neither of these boards, nor any of the members
thereof, are charged with any acts that can properly be
characterized as willfully fraudulent. The material facts,
as found in the complaint, and others which we take judicial
notice of in connection therewith, may be summarized as
follows:

Prior to December 31, 1908, the state railroad commis-
sion commenced a proceeding against appellant under the
then railroad commission law for the purpose of ascertaining
the total market value of the lines, equipment and property
of appellant used for public convenience within the state,
commonly called operating property. Having, on December
31, 1908, completed its investigation in that behalf, in which
we must presume that appellant was awarded full and fair
hearing, as provided by that law, the railroad commission
made and signed detailed findings of fact wherein it found,
among other things, in substance, as follows:

That it would cost to repro-
  duce the lines of railway be-
  longing to appellant, consid-
  ering the improvements and
  structures as new.........$61,680,340.75
That it would cost to repro-
  duce the equipment owned
  and used by appellant.....  14,724,695.94

17—84 wash.

That it would cost to repro-
duce the right of way and
terminals owned and used
by appellant ............ 32,862,872.00

Such total reproduction cost aggregating. .$109,267,908.69
That the lines of railway
owned by appellant, consid-
ering their depreciation by
wear and tear, are of the
value of ................$55,475,827.25
That the equipment owned by
appellant, considering its de-
preciation by wear and tear,
is of the value of......... 9,677,946.87
That the real property, con-
sisting of right of way and
terminals, owned and used
by appellant for railway pur-
poses, is of the value of.... 32,862,872.00
The total value as so found, aggregating...$98,016,646.12
The complaint continues as follows:

"Having so determined the then actual cash market value
of the said railway system and equipment belonging to
plaintiff in this state to be the sum of $98,016,646.12, as
aforesaid, the said railroad commission, in said proceeding,
further found, ascertained and determined the density of
traffic and the volume of business along the line of plain-
tiff's said railway in the state of Washington, the nature
of the country through which the line ran, the facilities for
transacting railroad business owned and operated by pri-
vate individuals, such as warehouses and docks; the price at
which plaintiff purchased its fuel supply, the resources of
the country adjacent to its line and the density of popula-
tion living contiguous thereto, and from such findings, cir-
cumstances and considerations, said railroad commission as-
sumed and pretended to ascertain and determine the value
of plaintiff's said railway lines, equipment and appurte-

nances as a whole over and above and in addition to the actual cash market value thereof, so found by said commission to be the sum of $98,016,646.12, on account of said facilities and the said other considerations last mentioned, to wit: on account of the facilities for the transaction of business by said railway system in this state and the supposed favorable location, as aforesaid, and the facilities owned by other parties, the cost of fuel, etc., and thereupon . . . found and determined the then value of the said property to be the sum of $110,308,451.12, . . . thereby adding to the value of plaintiff's said railway system, equipment and improvement the sum of $12,291,805.00 over and above the actual cash value of the said properties, and the whole thereof, as theretofore determined by said railroad commission."

Thereafter, on the 12th day of August, 1911, the public service commission of the state, having succeeded to the powers and duties of the railroad commission, upon further investigation, in which we must presume that appellant had a full and fair hearing as provided by the public service commission law, made additional findings supplemental to those made by the railroad commission on December 31, 1908, by which additional findings it was determined that appellant had expended certain sums for new equipment and for additions and betterments amounting in the aggregate to the sum of $16,938,172.06, which was added by the public service commission to the total valuation found by the railroad commission on December 31, 1908, so that the total value of appellant's operating property within the state was found by the public service commission to be $127,246,-626 on August 12, 1911.

We note here that the complaint contains no allegation that these findings of "total market value of the line, equipment and property of . . . (appellant) . . . used for the public convenience within the state," using the language of the former railroad commission law and the present public service commission law as to the ultimate findings to be made by the commission, have been appealed from, as

provided by law, or that they were not at all times herein involved, in full force and effect and conclusive as of the time of their making, as expressly provided by the railroad and public service commission laws.

Appellant's net annual earnings have decreased from approximately $7,000,000 in 1907 to approximately $4,000,-000 in 1912, the years immediately preceding those in which the railroad commission's findings of value were made and in which this assessment and equalization was made. This fact is set out in the complaint evidently as tending to show a decrease in the value of appellant's property between the time of making the findings by the railroad and public service commissions and the assessing of appellant's property for the year 1913.

The complaint continues as follows:

"In the month of May, 1913, the tax commission of the state of Washington adopted said valuation by said public service commission, less the value of certain property not yet put into operation and therefore subject to local assess-ment, and ascertained and determined the value of plaintiff's said railway system, equipment and appurtenances in the state of Washington by arbitrarily adding the sum of said expenditures (less said property not yet in operation) and found the same to be $126,165,337; and pursuant to the provision of statute certified said valuation so found and determined to the state board of equalization. In the month of April, 1913, plaintiff duly appeared before the said board of tax commissioners, at a hearing fixed by said board for that purpose, and offered evidence to said board tending to show and showing the facts hereinbefore set forth concerning the erroneous and wrongful inclusion in the said valuation by the railroad commission of plaintiff's property of said item of $12,291,805 in addition to the actual cash value of said property; and the plaintiff duly objected and protested against the inclusion of said amount in the valuation of the said property for the purpose of taxation by said board of tax commissioners; but said board of tax commissioners wholly overruled and rejected the said objections and protest of the plaintiff, and, notwithstanding the same,

and contrary to the undisputed evidence adduced before it, wrongfully and erroneously included said item of $12,291,-805 in the value of plaintiff's property for taxation."

This action of the board of tax commissioners was, we must assume, taken in pursuance of the law touching its powers and duties as the assessor of the operating property of railway companies, Laws of 1907, page 132; Rem. & Bal. Code, § 9141 and following; and also in pursuance of the mandatory provisions of the public service commission law of 1911, relating to the valuation of operating railway property by the public service commission and the controlling effect of such valuation for purposes of taxation, Laws of 1911, pages 601, 604, § 92 (3 Rem. & Bal. Code, § 8626-92), which was in force at the time of the making of the assessment of appellant's operating property by the board of tax commissioners in May, 1913, hereinafter quoted.

The complaint continues as follows:

"Thereafter, in the month of September, 1913, the board of equalization of the state of Washington duly convened pursuant to the provisions of the statute creating said board and defining and prescribing its powers and duties, and the plaintiff duly appeared before said board at a hearing fixed by it for that purpose, and adduced before the said board evidence tending to show and showing all of the facts hereinbefore set forth, and in due form requested the said board of equalization to deduct from the said valuation of the plaintiff's property the said item of $12,291,805 so erroneously and wrongfully included therein, and certified to the said board by the said tax commissioners, and to eliminate said sum and amount from the valuation of plaintiff's said property for the purposes of assessment and taxation in the defendant counties for the year 1913, and objected and protested against the inclusion by said board of equalization of the said item of $12,291,805 in the valuation of plaintiff's property for taxation in said year.

"The board of equalization wholly ignored the evidence tendered by the plaintiff with respect to said matters and wholly rejected and overruled the protest of plaintiff, and contrary to the undisputed proof, and contrary to the laws

and constitution of the state of Washington and the consti-
tution of the United States, arbitrarily and wrongfully, and
wholly without inquiry or the exercise of their own independ-
ent judgment, fixed and determined the value of plaintiff's
said property in this state for the purposes of assessment and
taxation for the year 1913 by arbitrarily adopting the said
findings of value so made by the said railroad commission on
the 31st day of December, 1908, supplemented by the find-
ings of said commission in the same proceeding on the 12th
day of August, 1911, in the said sum of $126,165,337;
and after determining the ratio at which property was gen-
erally assessed in the various counties of the state, including
the defendant counties, did, in the form and manner pre-
scribed by law, certify to the assessors of each of said de-
fendant counties the respective proportion of the total value
of said property that the mileage therein bears to the total
mileage in the state, as is hereinafter more particularly set
forth and alleged, and said valuation was equalized in the
defendant counties at the same per cent of true value as
adopted for other property in the county, . . .

"The effect and result of the inclusion of said item of
$12,291,805 and addition thereof to the valuation of plain-
tiff's property for 1913 is the assessment of said property to
include the supposed value of 'good-will' of plaintiff's bus-
iness, over and above value of its property, and over and
above each and every element and item of value pertaining
thereto and valuation of said property by $12,291,805
over and above cost of reproduction thereof, as so found
and determined by said railroad commission, is valuation and
assessment for taxation of a mere incident of property, in no
sense property subject to taxation within the meaning of the
constitution and laws of the state of Washington. . . .

"Valuation of plaintiff's said property in a sum more
than twelve million dollars in excess of its true and fair phys-
ical value was a purely arbitrary valuation, depending upon
no known definite or ascertainable criteria, wholly incapable
of verification or admeasurement, a mere caprice of the tax-
ing authorities, adopted blindly and without inquiry or the
exercise of judgment, and added to the true and fair value of
plaintiff's property for the sole purpose of assessment and
taxation, thus swelling the taxation value of said property
far beyond the valuation on which plaintiff can or is per-

mitted by the public service commission of this state to earn
a reasonable or any return.  . . .

"There are and were in the year 1913 in this state many
and various kinds and classes of property, including hotels,
theatres and places of public amusement, restaurants and
places of public entertainment, wholesale and retail mercan-
tile establishments and manufacturing plants, and many
other properties comprising and including all kinds of bus-
iness properties and institutions engaged in business as go-
ing concerns, to which there does and did in the year 1913,
and at all other times appertain large values on account of
facilities for the transaction of their respective businesses,
and to which there did and does appertain large values on
account of 'good-will' belonging thereto, so that said bus-
iness properties were, as going concerns, worth many mil-
lions of dollars more than the fair physical value of the tan-
gible real and personal property involved therein; and the
same were of the true and fair market value as going con-
cerns, including good-will or commercial value, of many mil-
lions of dollars over and above the cost of reproduction or
replacement thereof; and the said business institutions and
properties were as susceptible and capable of valuation and
assessment for taxation in the year 1913 and at all times,
with respect to such intangible values, as was the property of
plaintiff.    But in no county of the state were any of said
business institutions or the property devoted thereto, whether
corporations or individuals, assessed for taxation upon a
basis including aggregation or going concern value.  In every
instance all of said other properties were assessed in detail
upon the basis only of fair value of the several parcels and
items of real and personal property composing the same.
The various assessors and taxing authorities in valuing said
business properties for taxation for 1913, and at all other
times, have in no instance ever considered the value thereof
as going concerns, or assessed or added to the value of the
physical property anything for 'good-will' or commercial
value, or otherwise; and have never considered the earnings
of said properties or their value as a whole over and above
the value of the several parcels and items of real and personal
property composing the same; nor has any assessor ever pre-
tended to assess any property in this state above the cost of
reproduction or replacement thereof, nor for even as much

as such cost of reproduction or replacement, without making
liberal allowances for depreciation; nor have the taxing au-
thorities of the state in any other way or by any other means
assessed general business property in the state in a manner
or upon a basis to produce values analogous or similar to the
values given plaintiff's said property in the year 1913 as
aforesaid. Had plaintiff's said property been valued by the
same method and upon the same basis as the general property
in the state, it would have been valued at no more than said
sum of $98,016,645 (plus said additional property) so found
by said railroad commission to be the true and fair value
thereof, and the said sum of $12,291,805 would not have
been added thereto. All of which was well known to the said
taxing authorities of the state of Washington at all times,
and especially well known to said state board of tax com-
missioners; yet said board never has made any attempt to
secure assessment and valuation for taxation of said general
property in the state by any similar method or on any similar
principle, although vested by law with full power and au-
thority over local assessors and taxing authorities in the
premises. The said board of tax commissioners and the as-
sessors and other taxing officials have uniformly construed
and applied the revenue laws of the state as not contemplat-
ing assessment for taxes on the basis of aggregations or go-
ing concern value, or the valuation of 'good-will' with re-
spect to property generally, except railways. But the tax
authorities have construed and applied the laws of the state
with the intent and effect unjustly and illegally to discrim-
inate against plaintiff in the valuation of its property for
taxation."

The complaint contains further allegations showing the
apportioning of this assessed and equalized value of appel-
lant's operating property to the several counties; and the
tender of payment of taxes by appellant to the several county
treasurers, computed upon a valuation of its operating prop-
erty in a sum equal to the assessment less the $12,291,805
alleged by appellant as excessive. The supplemental com-
plaint also alleges facts showing payment under protest to
the several county treasurers of the full amount of taxes
claimed by the respondents to be due. No question is raised

touching the sufficiency of the allegations of tender and pay-
ment under protest, to entitle appellant to relief, providing
it has alleged sufficient other facts entitling it to relief.

This statement of the somewhat involved facts, as counsel
for appellant apparently view them, may seem unduly
lengthy. However, we proceed at such length and in detail
to the end that no really material fact disclosed by the com-
plaint, and other facts relative thereto within our judicial
knowledge, be lost sight of.

In the allegations of the complaint reference is made by
number to the published findings of the railroad commission
of December 31, 1908, touching the affairs of and the value
of the property of appellant, though no copy of such find-
ings is attached to the complaint nor physically made a
part thereof. However, counsel for appellant asks that we
take notice of all of these findings in so far as they are ap-
plicable to this controversy. This request seems to be rested
upon the ground that we should take judicial notice of such
findings without their being pleaded. However, counsel has
filed in this cause a copy of these findings, and we will take
notice of them, assuming for argument's sake that they are
a part of the complaint. We express no opinion upon the
question of our right to take judicial notice of them re-
gardless of their being pleaded. These and possibly some
other facts will be noticed as may become necessary in our
discussion of the several contentions of counsel.

Counsel for appellant state the first of their principal
contentions as follows:

"The valuation of appellant's operating property by in-
cluding the value of the 'good-will' or its supposed value
as a whole and as a going concern at a sum $12,291,805 in
excess of the full and fair value of each and every parcel of
real and article of personal property used in the operation
of appellant's railway system, and in excess of the cost of
reproduction thereof, is not warranted by the constitution
and revenue laws of this state."

To the end that we may not be led astray by the words "good-will," which counsel for appellant have here and in the complaint used as descriptive of that intangible value attaching to appellant's operating property, which the railroad commission regarded as adding $12,291,805 to the value of the physical components of such property viewed separate and apart from the assembling of such components into an organized whole with the attendant advantages and privileges resulting therefrom, let us see what this so-called "good-will" is, in fact and substance. Is it that intangible something which is so intimately connected with the personal element entering into the conduct of a private business concern having no duties relating to the public other than those of private persons and no privileges or advantages save such as all private persons may acquire, which intangible something adds in some degree to the value of such business because it materially influences its earning power? Is it not rather more akin to that intangible element which enters into the value of real property by reason of its locality, its peculiar adaptability to some particular use wherein there enters no personal element whatever, but only that intangible something influencing the value of such property which is inseparable from the physical property itself regardless of its ownership? If this element of intangible value found by the railroad commission to constitute a substantial portion of the value of appellant's operating property is more of the nature suggested by the latter than the former question, we apprehend that it is not in substance mere "good will" within the commonly accepted meaning of those words as applied to the business of a going private concern.

Recurring to the allegations of the complaint first above quoted, we are informed that the elements considered by the railroad commission in determining the amount of this intangible added value of appellant's operating property are:

(1) "Density of traffic and volume of business along the line of plaintiff's said railway in the state of Washington."

(2) "The nature of the country through which the line runs."

(3) "The facilities for transacting railroad business owned and operated by private individuals, such as warehouses and docks."

(4) "The price at which plaintiff purchases its fuel supply."

(5) "The resources of the country adjacent to its line and the density of the population living contiguous thereto."

Now in considering these elements as adding value to appellant's operating property in connection with the question of whether such value resulting therefrom is nothing more substantial than "good will" value, let us keep in mind as we proceed that appellant is not a private business concern but is a public service transportation corporation; that appellant's operating property is all devoted to the public service of transportation over lines and terminals having a fixed location; that not only are appellant's lines and terminals as fixed and permanent in location as other real property, but its operating personal property is also in a sense equally fixed in location and use, in that it must be used in connection with and upon such lines and terminals; that appellant cannot abandon its duty to serve the public, nor can it dispose of its property real or personal in such manner as to result in discontinuance of such service; that appellant and its successors in ownership of such property are bound to maintain such service, and incidentally to maintain an organized entity necessarily consisting of equipment and operating property, both real and personal, as a unit organization such as will make the rendering of such service possible. Having in mind this entity, all parts of the physical property of which, both real and personal, is, so to speak, dedicated by law to the particular public service to be rendered upon appellant's fixed lines and terminals and not elsewhere,

what is there about these intangible elements considered by the railroad commission as adding value to the whole materially different in substance from those intangible elements which enter into the value of real property.

The density of traffic and the volume of business along the line of appellant's railway add value to its operating property just as the density of traffic and volume of business add value to the real property, regardless of its ownership. The nature of the country through which appellant's lines run influences the value of its operating property in the same manner, regardless of the ownership of such property. The facilities for transacting railroad business owned and operated by private individuals and others, such as warehouses and docks adjacent to appellant's railway lines, add value to appellant's operating property for substantially the same reasons, and this would be true regardless of the ownership of such property. The resources of the country adjacent to appellant's line and the density of population living contiguous thereto add value to its operating property in the same manner. The price at which appellant purchases its fuel supply, taking the allegation of the complaint alone, relative thereto, may not seem to add intangible value to appellant's operating property of this same nature; but turning to the findings of the railroad commission, which for argument's sake we are treating as properly pleaded, we are informed that appellant, by virtue of its ownership of the capital stock of a subsidiary corporation, controls valuable and extensive coal mines which are located in close proximity to its main line of railway and which are also located near the summit of the Cascade mountains, thereby enabling the appellant to distribute coal therefrom for the most part by down grade haul along its railway for consumption by its locomotives and,

"That, by reason of the proximity of the said coal lands to the said line of railroad and by reason of the said road owning and controlling said mines, it adds great value to the

lines of the said road within the state of Washington, in that it enables said road to lay down its fuel at the different distributing points along its line, used and consumed by it in the operation of its trains, at greatly reduced cost over other lines operating in the state of Washington."

Aside from the ownership and control of these mines by appellant, it is manifest that their presence alone in such proximity to appellant's main line of railway adds value to the entity constituted by its operating property, of a nature akin to that which favorable location adds to the value of real property, and such would be presumably true regardless of the ownership of the mines, and regardless of the ownership of appellant's operating property; assuming, of course, as we must, that such operating property is to remain intact as an organized entity. The ownership of these mines by appellant, however, is an element which we concede is of a somewhat different nature, which we will notice later.

Another intangible element considered by the railroad commission as adding value to appellant's operating property not specifically mentioned in its complaint but complained of by counsel as being so-called "good will," appears in the railroad commission's findings as follows:

"That since the construction of the line of the Northern Pacific Railway Company through the state of Washington, said company has expended large sums of money advertising and exploiting the resources of the country adjacent to its lines and has encouraged immigration along its lines so that the country adjacent and tributary to its rail lines has a comparatively large population and the density of traffic and the country tributary to its lines are comparatively highly developed, compared with other portions of the state of Washington, which density of traffic and population add value to the said lines."

This, in its final analysis, is but a finding touching the extent of the development of the country tributary to appellant's railway lines. It manifestly is not the effort of appellant to populate and develop such tributary country that

constitutes the intangible value considered by the railroad commission, but it is the fact that such tributary country is populated and developed. This intangible element of value of appellant's operating property exists without reference to the manner of its bringing about and is in substance of the same nature as the resources of the country adjacent to appellant's railway lines above noticed.

Another finding of the railroad commission complained of by counsel for appellant, though not specifically mentioned in the complaint, appears in the commission's findings as follows:

"That in addition to the properties hereinbefore set out as being owned by the Northern Pacific Railway Company, said company is the owner of the right to select Government land in lieu of lands relinquished by it to the United States included within its land grant in the state of Washington, amounting to 631,252.88 acres, which right the commission estimates to be of the reasonable value of $8 per acre."

Counsel seem to argue that this was regarded by the railroad commission as adding an element of intangible value to appellant's operating property. This finding does not so indicate, and we think the findings as a whole negative the idea that this right of appellant was considered by the railroad commission as adding value to appellant's operating property.

These are the only intangible elements claimed by counsel for appellant to have been regarded by the railroad commission as adding value to appellant's operating property to which our attention has been directed in such manner as to call for our special notice. Aside from the consideration by the railroad commission of the control of the coal mines by the appellant as adding to the intangible value of its operating property, we see nothing in the intangible elements of value actually regarded by the railroad commission as adding such value of a substantially different nature from those intangible elements which enter into and inhere in the value

of real property, regardless of its ownership; and we are of
the opinion that the element of appellant's control of the coal
mines, as found by the railroad commission, is of too small
consequence to render the nature of the intangible elements
entering into the value of appellant's operating property ma-
terially different from that which enters into the value of real
property. This we think is the real nature of this intangible
added value. It is, as we view it, something quite different
from mere "good-will."

Appellant does not allege, as we read its complaint, nor
does its counsel seriously contend, as we read their briefs,
that its operating property within the state in the year
1913, viewed as a unit, was not then in fact of the total
market value of $126,165,337, as determined by the state
boards of tax commissioners and equalization; but the con-
tention is, in substance, that such total valuation was de-
termined by a method which included an element of intangible
value of the same nature as that which attaches to a large
quantity of other property within the state, which element
of intangible value was not included in the valuation of other
property by the county assessors in determining the value
of such property for taxation in that year. Now let us
again recur to the allegations of the complaint and see what
this other property claimed by counsel to have been assessed
without the inclusion of this intangible element of value is.
In the beginning of the last above quoted paragraph of the
complaint we are informed that:

"There are and were in the year 1913 in this state many
and various kinds and classes of property, including hotels,
theatres and places of public amusement, restaurants and
places of public entertainment, wholesale and retail mercan-
tile establishments and manufacturing plants, and many
other properties comprising and including all kinds of busi-
ness properties and institutions engaged in business as going
concerns, to which there does and did in the year 1913, and
at all other times, appertain large values on account of
facilities for the transaction of their respective businesses,

and to which there did and does appertain large values on account of 'Good-will' belonging thereto, so that said business properties were, as going concerns, worth many millions of dollars more than the fair physical value of the tangible real and personal property involved therein;"

These are the properties claimed to have been valued for taxation without the inclusion of this so-called "good-will" value attaching thereto. We are unable to read this statement of what such property consists of, so as to include therein operating property of any other railway company, nor does the language point with any degree of certainty to the operating property of any other public service corporation. We think this allegation means nothing more than that the "good-will" value of private business concerns was not added to the value of their physical property in determining its value for taxation by the county assessors in the year 1913. We understand counsel for appellant to contend that it would not have been lawful for the county assessors to have added "good-will" value, to the value of the physical property of such concerns for the purpose of taxation. Indeed, their whole argument seems to be rested upon the theory that such "good-will" value is not taxable as property at all. In support of this theory, they cite, among other portions of our revenue laws relating to the duties of county assessors, the following:

"He shall actually determine as nearly as practicable the true and fair value of each tract or lot of real property." Rem. & Bal. Code, § 9102 (P. C. 501 § 121).

"He shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money at the time the assessment is made." Id., § 9112 (P. C. 501 § 113).

These provisions of the statute with others, it is insisted, evidence a legislative intent to have each lot, tract, article and piece of property, whether real or personal, valued by the county assessors for taxation by itself; which precludes

the idea of the intangible element of "good-will" entering into such valuation. We shall so assume for the purposes of this controversy.

The county assessors are not, however, the assessors of railway operating property; that duty being committed by law to the state board of tax commissioners. The statute so providing, we think renders it plain that the assessed valuation is to be placed upon the entire operating property of each railway company as a unit. Sections 9141 and 9148, Rem. & Bal. Code, provide, among other things, as follows:

"The state board of tax commissioners shall make an annual assessment of the operating property of all railroad companies within this state, for the purpose of levying and collecting taxes as hereinafter provided."

"The board shall prepare assessment-rolls and place thereon, after the name of each railroad company assessed, the general description of the property of such railroad, which shall include its real estate, right of way, tracks, stations, terminals, appurtenances, rolling stock, equipment, franchises and all other real and personal property of said company, which shall be deemed and held to include the entire property and franchises of such railroad company within the state, and all title and interest therein. . . . In case of railroad companies which own or operate railroads lying partly within and partly without the state, the said board shall only value and assess the property within this state. In determining the value of the portion within the state, the board shall take into consideration the value of the entire system, the mileage of the whole system, and of the part within this state, together with such other information, facts and circumstances as will enable the board to make a substantially just and correct determination. When the value of the property of the railroad company within this state shall have been ascertained and determined, the amount thereof shall be entered upon said assessment-rolls, opposite the name of the company, and shall be and constitute the value of the entire property of such railroad company within this state, for the levy of taxes thereon, subject to revision and correction by the state board of equalization as hereinafter provided."

This language of the latter section manifestly refers to operating property, or as termed in the railroad and public service commission laws, "property used for the public convenience," and is the same class of property which it was the duty of the railroad commission in 1908 to determine the "total market value of," which duty later devolved upon the public service commission. This, we think, is rendered plain by a reading of § 9148, above quoted, in connection with the provisions of the railroad commission law, especially as amended by the public service commission law of 1911 touching the duty of the commission and the effect of its finding of value of such property; the Laws of 1911, § 92, at page 604, reading:

"When the commission shall have valued the property of any public service company, as provided for in this section, nothing less than the market value so found by the commission shall be taken as the true value of the property of such company used for the public convenience for the purposes of assessment and taxation." 3 Rem. & Bal. Code, § 8626-92.

In *State ex rel. Oregon R. & Nav. Co. v. Clausen*, 63 Wash. 535, 116 Pac. 7, and *Spokane & I. E. R. Co. v. Spokane County*, 75 Wash. 72, 134 Pac. 688, we held, in effect, that the property to be assessed by the state board of tax commissioners and the property to be valued by the railroad and public service commissions is the same property. We are prompted to make this observation so that it may be rendered plain that the organized entity consisting of appellant's operating property, so valued for purposes of taxation, did not include any property other than the property of appellant "used for the public convenience," and that whatever other property may have been owned by appellant in that year was not valued for taxation by the state board of tax commissioners, but by the county assessors, and was not regarded as entering into or forming part of appellant's operating property.

This court has recognized, in harmony with what seems
to be the well settled law as established by the decisions of the
courts generally, that the valuation of the operating prop-
erty of a railway company for purposes of taxation by the
state board of tax commissioners as an entirety and the
apportioning of such valuation to the several counties
through which the line of such railway company runs, not-
withstanding certain provisions of our constitution which
we will presently notice, is a lawful method of valuing such
property for purposes of taxation. *Great Northern R. Co.
v. Snohomish County*, 48 Wash. 478, 93 Pac. 924; *Great
Northern R. Co. v. Snohomish County*, 54 Wash. 23, 102
Pac. 881; *State ex rel. Morton v. Back*, 72 Neb. 402, 100
N. W. 952, 69 L. R. A. 447; *Wells, Fargo & Co.'s Express
v. Crawford County*, 63 Ark. 576, 40 S. W. 710, 37 L. R. A.
371; *State v. Western Union Tel. Co.*, 96 Minn. 13, 104 N.
W. 567; *Chicago & N. W. R. Co. v. State*, 128 Wis. 553, 108
N. W. 557; *State Railroad Tax Cases*, 92 U. S. 575;
*Chicago, B. & Q. R. Co. v. Babcock*, 204 U. S. 585.

The last cited case is particularly applicable here, because
it was there held that a state may tax that portion of the
operating property of an interstate railway lying within the
state as an organic portion of the whole. However, counsel
do not contend against the effect of the unit rule of assess-
ment except in so far as such rule has, as they claim, been
applied by the state board of tax commissioners so as to
make a part of the total valuation of appellant's operating
property the intangible elements of value amounting to
$12,291,805.

There has not come to our notice any decisions of the
courts dealing directly with the exact problem thus presented.
Some pertinent observations, however, have been made by
the courts of Michigan and Wisconsin which are in harmony
with our view already indicated that this intangible value is
something different from "good will" value. In *Detroit
Citizens' St. R. Co. v. Common Council of Detroit*, 125

Mich. 673, 85 N. W. 96, 86 N. W. 809, 84 Am. St. 589, involving the taxation of the company's franchise in connection with, or rather as an intangible element of, value attaching to its physical property, Justice Hooker, speaking for the court, said:

"When, however, they [franchises] are associated with property which makes them available, the property with which they are connected generally takes on a new form in the law, and is enhanced by the privileges and uses to which it is adapted and applied, and pays a correspondingly increased tax, because it has an increased cash value. . . .

"The relator contends that the personal property should be assessed upon the basis of the component parts of the railway system, i. e., a given price per mile for track and overhead construction, an average sum per car, and a certain sum for machinery, all bearing some relation to their cost or the price at which similar articles can be obtained. In fact, the relator claimed upon the hearing below that the tangible property was so valued, and that some $2,000,000 or more was then added for the value of the franchise. The court set the matter at rest, however, by finding that, in fixing the value of the personal property, the assessors took into consideration and included the franchise in the streets. . . . The individuality of the elements of the road as chattels, i. e., spikes, rails, ties, poles, wire, etc., has become lost, as in other cases of fixtures, by being transformed into other property, the value of which is to be determined by relation to that kind of property, and not to spikes, ties, rails, etc., just as fine furniture is valued by comparison with similar articles, and not with similar materials to those entering into its construction.

"It is obvious that the relator's property is worth much more as a street railway, equipped and in successful operation, than the elements which enter into its construction would be as second-hand railway material. It may be worth much more than what it would cost to reproduce the physical aggregation of property constituting such railway and its equipment, and circumstances might exist which would make it worth less. The propriety of treating aggregations of property as a unit is as natural and proper for the purposes of assessment as for sale, and this is especially so where the

various articles are so essential to the purpose for which they are combined that the withdrawal of one or any class would destroy, or substantially impair, the use of all for the purposes to which in their new form they are adapted.

"We may take judicial notice that the relator's street railway has a large market value, much in excess of any amount that could be obtained for the same if it were to be dismantled, and its rails, cars, motors, wires, etc., sold separately. In such a case it would practically go as junk. Again, the easement of a steam railroad in a continuous right of way through the state, over a desirable route, and in use, has a much greater value than the same kind of a right not in use, or in small, disconnected parcels, or in a remote region, where it cannot be used profitably. Manufacturing establishments and large buildings, favorably located and adapted to special uses, illustrate the same principle, and we think it is incorrect to say that the recognition of this principle, and its consideration in assessment, is taxing the good will of a business, which, like executory contracts, has not, usually, been thought to be taxable."

In *Washburn v. Washburn Waterworks Co.*, 120 Wis. 575, 98 N. W. 539, Justice Marshall, speaking for the court touching the element of intangible value entering into the operating property of a public service corporation having reference more particularly, however, to its franchise, after citing decisions, observed:

"An examination of those and other cases decided here, that might be referred to, shows that it has been as firmly established as anything can be by judicial determinations, that all the property of a public service corporation, such as appellant, street and other railway companies, and public lighting companies, whether real, personal or mixed, in the ordinary sense of those terms, including franchises other than the mere right to be a corporation, is one entire indivisible thing; that all the parts partake of the nature of the franchise from which springs the public duty, and as that is deemed to be personalty, all should be regarded as such. In that view it would be the height of absurdity to consider value and impose a tax upon one part of such entire thing separate from the rest. There can be no separation

without destruction. Therefore the separate value of the parts in the aggregate would not necessarily approximate to or be any legitimate measure of the value of all the parts, viewed as one complete machine, so to speak. The franchise by itself would be valueless. The plant in its parts as realty and personalty according to the character thereof, irrespective of the combination of all into one entire thing. might be of little value, and probably would be, as compared to what they would represent in the new form, produced by the union of many parts into one. The great value is produced by the combination of parts into one complete working machine, adapted in a high degree to the service of man. One might as well endeavor to value one part of any mechanical device by itself as to so value the franchise of a public service corporation by itself, or so value its land, or likewise its movables. To do so leaves out of view the great and often chief element of value which is produced by the combination. So in order to deal justly in the distribution of public burdens, the entire property in use and for use in the exercise of the public franchise, for the purposes of taxation, should be regarded as realty, the franchise and movables being viewed as appurtenant to the lands, or the intangible element regarded as personalty, and the physical elements, consisting of lands and movables, be regarded as appurtenant thereto and partaking of its character."

Assuming that the Michigan and Wisconsin courts in these decisions were dealing with no other intangible element of value than that of a franchise, we think, nevertheless, their observations are applicable here, in that such franchise value attaching to the physical property involved in those decisions attaches to the physical property in the same way and is of the same nature as such elements of value considered by the railroad commission and the tax boards in this controversy. The intangible value here involved is no less inseparable from the value of the physical property.

We are of the opinion that this intangible value, considered  by the railroad commission, the state board of tax commissioners and the state board of equalization as entering into and enhancing the value of appellant's operating prop-

erty, was not the application of an unlawful measure of value of such property for purposes of taxation, nor was it a measure of the value by a different standard than that applied by the county assessors to the property of the concerns of the nature mentioned in appellant's complaint, notwithstanding the "good will" of such concerns was not considered as an intangible element of value attaching to their property. The element of "good will" value, which it is insisted was omitted by the county assessors from the value of the property of business concerns, attaches to the business rather than to the physical property of the concern; while this intangible element considered by the railroad commission and the state taxing boards as enhancing the value of appellant's operating property attaches to and inheres in such property regardless of its ownership. This, we think, logically results from the fact that such property constitutes an organized entity having a fixed physical location—dedicated by law, in a sense, to public service; and constitutes an entity which neither appellant nor its successors in ownership, whoever they may be, can destroy or impair so as to result in a discontinuance of such public service. This intangible element of value, as already suggested, is much more akin to that intangible something which has so much to do with the value of real property, inseparable therefrom so long as such intangible element exists, regardless of the ownership of such property.

We are reminded by counsel for appellant that the public service commission law was amended in 1913 touching the force and effect of the findings of the public service commission as to the value of appellant's operating property, to read as follows:

"The findings of the commission so filed, or as the same may be corrected by the courts, when properly certified under the seal of the commission, shall be admissible in evidence in any action, proceeding or hearing, excepting with respect to matters of assessment and taxation, in which the state or

any officer, department or institution thereof, or any county, municipality, or other body politic and the public service company affected is interested." (Laws of 1913, p. 665, § 92 [3 Rem. & Bal. Code, § 8626-92]);

which amendment became effective on June 12, 1913, before the equalization of the value of appellant's operating property by the state board of equalization in September of that year. In this connection, we note that, in 1913, before the passage of this amendment, another act was passed amending the general revenue laws of the state, reading in part as follows: "All property shall be assessed at not to exceed fifty per cent of its true and fair value in money." Laws of 1913, p. 438 (3 Rem. & Bal. Code, § 9112); which amendment also became effective on June 12, 1913. This amendment, which changed the statutory measure of values for taxation purposes from the true value as prescribed by Rem. & Bal. Code, § 9112 (P. C. 501 § 113), to "not to exceed fifty per cent" thereof, would seem to have been rendered necessary by the amendment to the public service commission law in this respect, to the end that the uniform rule of taxation prescribed by article 7 of our constitution be not violated. We therefore have a different rule for the valuing of all property within the state for taxation, coming into existence on June 12, 1913.

Counsel argue that the state board of equalization disregarded its duty in giving any consideration to the findings of the railroad and public service commissions of 1908 and 1911 as to the total value of appellant's operating property, because the measure of value applied by those commissions was, in no event, applicable in September, 1913, for purposes of taxation, another rule having been prescribed by statute and become effective on June 12, 1913. But let us also be reminded that the state board of tax commissioners valued appellant's operating property for taxation for the year 1913 and certified the same to the state board of equalization, as the statute required, in May, 1913; and that

the county assessors had made their assessments within their respective counties for that year prior to this statutory change in the measure of value, occurring on June 12, 1913. Rem. & Bal. Code, § 9102 (P. C. 501 § 121). So it is apparent that all of the property of the state had been assessed by the county assessors and the state board of tax commissioners before any change in the law touching the value of property for taxation had become effective. Manifestly then, such assessments were, at the time they were made, strictly legal unless that made by the state board of tax commissioners was excessive for some other reason than because of the inclusion therein of the intangible element of value complained of by appellant. Now, confining ourselves to this particular branch of the controversy—that is, the question of the inclusion of this intangible element of value in the assessment of appellant's operating property, the problem, in its last analysis, is, Was such intangible element of value properly included by the *state board of tax commissioners?* This question manifestly can only be answered in the affirmative in view of the state of the law in May, 1913, when that board assessed appellant's operating property and the county assessors had completed their assessments within the respective counties for the year 1913, all of the assessments of property within the state occurring when the prescribed statutory measure of value of all property for taxation was "market value." Reviewing the law upon this subject, as then existing, in *Spokane & I. E. R. Co. v. Spokane County*, 75 Wash. 72, 87, 134 Pac. 688, we said:

"These provisions, in their last analysis, seem to us to plainly fix the same measure of value, which reduced to its simplest terms, is 'market value.' Neither the revenue laws nor the public service commission law recognize any other standard of value. It follows that these laws, if administered according to their terms, will not result in unequal values being placed upon property of different owners, nor require

such owners to pay taxes other than in proportion to the value of their property, all measured by the same standard."

So it is not a question of the state board of equalization's adopting the findings of the railroad and public service commissions as to the value of appellant's operating property; but it is a question of that board's adoption of the value of appellant's operating property as determined by the state board of tax commissioners, the lawfully constituted assessor thereof. It is an assessment strictly legal when made, in so far as it included the intangible element of value above noticed, unless excessive because of changed conditions. We conclude that the change in the law touching the standard of value of property for taxation purposes did not render the duty of the state and county boards of equalization touching the equalization for the year 1913 different from what such duties would have been, in the absence of this particular change in the law.

Counsel for appellant state the second of their principal contentions as follows:

"The assessment of appellant's operating property on the basis of its supposed value in the aggregate, while assessing the general property of the state on a much more favorable basis, constitutes an illegal discrimination and violates sections 1, 2 and 3 of article 7 of the state constitution, and the 14th amendment to the constitution of the United States."

Our foregoing discussion, we think, leaves little to be said upon this contention, since we have determined that other property within the state was not assessed upon a more favorable basis than was appellant's operating property for the year 1913, in view of the nature of such property as an organized entity. So far as the measure of value of appellant's operating property as compared with the measure of value of other property within the state adopted for taxation purposes is concerned, we rest our conclusion that there has been no violation of the rule of uniformity prescribed by article 7, of our constitution, upon the grounds already

noticed. Upon the same grounds we rest our conclusion that no right guaranteed by the fourteenth amendment to the Federal constitution has been violated.

We are reminded by counsel for appellant of the provisions of § 3, of art. 7, of our state constitution, reading as follows:

"The legislature shall provide by general law ·for the assessing and levying of taxes on all corporation property as near as may be by the same methods as are provided for the assessing and levying of taxes on individual property."

The framers of this constitutional provision evidently recognized that it might be desirable, and even more conducive to the rule of uniformity prescribed by other sections of the constitution, that corporate property, by reason of the peculiar nature of much of such property, so far as the intangible elements entering into its value is concerned, be assessed by a method differing in some degree from that employed in the assessing of other property. We are of the opinion that the mere fact that the assessing of appellant's operating property as a unit by the state board of tax commissioners as prescribed by the law ·relating to assessment of railway operating property, instead of by the county assessors as other property is to be assessed under the general revenue laws, is not violative of this provision of the constitution; so long as such property is charged by the same rate of levy and its assessed value measured by the same standard as other property within the state. There is no question here involved as to the rate of levy; and we think we have already demonstrated that the measure of value applied to appellant's operating property is the same as that applied to other property within the state for the purpose of taxation. Our decisions in *State ex rel. Oregon R. & Nav. Co. v. Clausen*, 63 Wash. 535, 116 Pac. 7, and *Spokane & I. E. R. Co. v. Spokane County*, 75 Wash. 72, 134 Pac. 688, are in harmony with this conclusion, though this exact question was not there considered.

In support of their claimed violation of appellant's rights guaranteed by the fourteenth amendment to the Federal constitution, counsel for appellant cite, and apparently rely most strongly upon, the decision of the United States supreme court in *Raymond v. Chicago Union Traction Co.*, 207 U. S. 20. A critical reading of that case, we think, will show that a discrimination of the nature there involved does not exist, as claimed by counsel, in this controversy. The nature of the discrimination there involved is found in the statement of Justice Peckham, at page 36 of the official report, as follows:

"The case before us is one which the facts make exceptional. It is made entirely clear that the board of equalization did not equalize the assessments in the cases of these corporations, the effect of which was that they were levied upon a different principle or followed a different method from that adopted in the case of other like corporations whose property the board had assessed for the same year. It was not the mere action of individuals, but, under the facts herein detailed, it was the action of the state, through the board. There is here no contention of illegality simply because of assessing the franchises of these corporations at a different rate from tangible property in the state, which the state might do, *Coulter v. Railroad*, 196 U. S. 599, but it is asserted that the board assessed the franchises and other property of these companies at a different rate and by a different method from that which had been employed by the board for other corporations of the same class for that year. The result is an enormous disparity and discrimination between the various assessments upon the corporations."

It is not claimed that, in the assessing and equalization of the value of appellant's operating property, there was any discrimination made by the taxing officers as between it and other railway corporations. Even should we view the allegations of the complaint as having some reference to property and the intangible value thereof other than the mere good will of private business concerns, it is apparent that the allegations of the complaint do not even, as so

viewed, point with any degree of certainty to any material quantity of such property which had been assessed by the use of a different standard of value than that employed in assessing appellant's operating property; which, in any event, would render the complaint insufficient so far as this branch of the controversy is concerned. *First Nat. Bank of Aberdeen v. Chehalis County,* 6 Wash. 64, 32 Pac. 1051; *Puget Sound Nat. Bank of Seattle v. Seattle,* 9 Wash. 608, 38 Pac. 219.

We think we have shown that the intangible element of value attaching to appellant's operating property and considered by the railroad and public service commissions in determining the total value of such property is something more and quite different from mere "good-will" value attaching to a business of a private concern, and that the measuring of the value of such operating property by the inclusion of this intangible element therein is not a different measure of value than that applied to property of private concerns without regard to the good will value of the business of such concerns; because such good will value does not enter into the value of the physical property of such concerns, nor has the property of such concerns any intangible value of the nature which attaches to appellant's operating property. This, we think, in its last analysis, is the alleged discrimination which counsel insists has resulted from the valuation of property within the state for taxation in the year 1913. It seems plain to us that there has been no violation of any right guaranteed to appellant by either the state or Federal constitutions.

Counsel for appellant state their third and last principal contention as follows:

"The assessment of appellant's property so as to include the item of $12,291,805 in excess of the full cost of reproduction of the property was grossly excessive in the year 1913."

This contention apparently does not mean that appellant's operating property, viewed as a unit, was not in fact of the

total market value of $126,165,337, in the year 1913, as
determined by the state board of tax commissioners and the
state board of equalization for that year, and as was pre-
viously determined by the findings of the railroad and public
service commissions in the years 1908 and 1911. We have
already noticed that the appellant does not allege unquali-
fiedly that the total value of its operating property viewed
as a unit did not in fact equal that sum in the year 1913.
Counsels' whole argument seems to avoid, with marked cir-
cumspection, committing themselves to an unqualified conten-
tion that appellant's operating property viewed as a unit
was not of that total value in the year 1913; but is directed
to the question of the total value of appellant's operating
property, eliminating its intangible value when viewed as a
unit, as compared with the value of other property within the
state. Assuming, for argument's sake, that this is not a
wholly fair statement of counsels' position upon this, their
third principal contention, what facts are alleged in the com-
plaint pointing to a material depreciation in the market
value of appellant's operating property such as to warrant a
court of equity interfering with the assessment thereof for
purposes of taxation by the proper taxing officers of the
state? Counsel assert, under their third principal conten-
tion, that:

"The assessment is excessive because of the radical change
in conditions, resulting in a large decrease in the net earn-
ings of the property, and a consequent permanent impair-
ment of its value."

The only facts alleged or urged in support of this par-
ticular contention are the allegations of the complaint touch-
ing depreciation in the net earnings of appellant's operating
property from approximately seven million dollars in the
year 1907 to approximately four million dollars in the year
1912; the latter being the year immediately preceding that
in which this assessment was made. We also note that the
only specific sum claimed as the amount of such deprecia-

tion is the $12,291,805, mentioned in their complaint and in the preceding portion of their argument, claimed as unlawfully added to the value of appellant's physical operating property as its intangible value when viewed as a unit. We have also noticed that there is no willful fraudulent act charged against either the state board of tax commissioners or the state board of equalization; nor is it charged that either of these boards refused to hear all the evidence that was submitted to them by the appellant when they were considering the value of appellant's operating property. While it is alleged that these boards arbitrarily reached their decisions and refused to exercise their honest judgment, this, we think, amounts to practically nothing more than that they erroneously reached their decisions when the facts left no room for difference of opinion as to what their decisions ought to have been as to the value of appellant's operating property. To sustain this particular contention of counsel, it seems to us would mean nothing more than to say that the valuation of appellant's operating property as a unit in the total sum of $126,165,337, in the year 1913, was excessive and the result of arbitrary and capricious action on the part of these taxing boards, simply because it must be so presumed from the sole fact of this alleged excess of $12,-291,805; which in no event would constitute an excess valuation exceeding ten per cent. We think no decision can be found where a court of equity has ever interfered with an assessment upon such a showing as this, in the absence of a showing of actual fraud on the part of the taxing officers. Counsel call our attention to, and rely principally upon, our recent decision in *Spokane & I. E. R. Co. v. Spokane County,* 82 Wash. 24, 143 Pac. 307, to support their position in this particular contention, but in that case the railroad company's operating property viewed as a unit was alleged to be assessed at $12,500,000, when its market value at the time was in fact not in excess of $6,645,000. In other words, the allegations of the complaint in that case showed that the

railroad company's operating property was assessed substantially double its real value. If this could be clearly proven upon trial, together with other circumstances there pleaded, as was held, it would be an excessive assessment, and such as would warrant interference with by a court of equity, and would of itself raise a presumption of constructive fraud. The view there expressed is but in harmony with the previous decisions of this court holding, as stated by Justice Main, in *Simpson Logging Co. v. Chehalis County*, 80 Wash. 245, 141 Pac. 344, that:

"The value of property for the purposes of taxation as equalized or adopted by the board of equalization may be so grossly in excess of the actual value as to constitute constructive fraud. In such a case, the court has jurisdiction to review the assessment in a proper proceeding."

In no case has this court ever interfered with an assessment of property for purposes of taxation upon the sole ground of excessive assessment, in the absence of a showing of actual fraud on the part of the taxing officers, where the difference between the assessed value and the actual value was as small as ten per cent. We conclude that we should not interfere in this case, however strong the proof might be as to the actual value of the property being only ten per cent less than the amount it is valued by the proper assessing authorities—that, necessarily, being a question of opinion, and there being practically no other fact upon which to rest an attribution of fraud to such assessing and equalizing authorities.

Other minor contentions, are, we think, necessarily disposed of by what we have already said.

The judgment is affirmed.

MORRIS, C. J., ELLIS, FULLERTON, MOUNT, MAIN, CROW, and HOLCOMB, JJ., concur.